Phœnix Water Company v. Fletcher.

## PHŒNIX WATER COMPANY *v.* FLETCHER *et al.*

THE prior appropriator of a stream of water for mining purposes, has a right to have the water flow down above the point of his appropriation without interruption or diminution in quantity.

One who enters upon a stream of water above the prior appropriator and erects hydraulic works, must so construct them as not to impede the regularity of the flow of the water, if its irregular flow would injure the first appropriator.

A mere temporary or trivial irregularity in the flow of the water, such as does not cause actual injury to the prior appropriator below, will not be actionable; but if a sensible or positive injury be caused, such as would diminish the value of the water right, an action will lie, not only to recover damages, but to enjoin the future commission of the wrong.

Where special issues are submitted to a jury, they should include all questions of fact raised by the pleadings and necessary to determine the case, and should be separately and distinctly stated, so that each question should relate to only one fact.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

The facts are stated in the opinion of the Court.

*H. P. Barber*, for Appellants.

Let us examine the reasons assigned by the Court below for its decision:

1st. " That the dam was necessary for defendants' mill."

Admit this; but it by no means follows that the necessities of defendants can deprive us of prior vested rights.

2d. " That the water was suffered to flow into plaintiffs' ditch after its use by the mill."

True; but it was returned in an impure and deteriorated condition, being filled with refuse bark and sawdust, which is not attempted to be excused even on the plea of "necessity," and which would be a legitimate ground of action, even if defendants had been prior instead of subsequent locators.   A proprietor above cannot use the water so as to corrupt or impair its quality to the injury of others, as in permitting sawdust to fall into it.   (*Lewis* v. *Stein*, 16 Ala. 218.)   · We make no complaint as to the mere user of the water by defendants, but they cannot destroy its utility for our user—*a fortiori* where we have a prior right.

3d. " That the injury was *damnum absque injuria.*"

This is certainly a novel application of the rule. (20 Barb. 645.) Broom (Legal Maxims, 156) says: " It frequently happens in the ordinary proceedings of life, that a man may lawfully use his own property so as to cause damage to his neighbor, provided it be not *injuriosum;* or he may, while pursuing the reasonable exercise of an established right, casually cause an injury which the law will

Phœnix Water Company *v.* Fletcher.

regard as a misfortune merely, and for which the party from whose act it proceeds will be liable neither at law nor in conscience."

All these conditions are wanting in the present case.

I. The deterioration of the water by sawdust and refuse bark was not a lawful use of it.

II. This was not defendants' "own property." So far as prior appropriation could establish the right, it was that of plaintiffs'.

III. This abuse of defendants' user was "*injuriosum*" to plaintiffs'.

IV. Defendants, as against us, were not in the exercise of any "established right," for our rights being prior in point of time were superior in law. (*Tuolumne County Water Co.* v. *Chapman*, 8 Cal. 392; Angell on Water Courses, 159, Sec 140; Id. 412, Sec. 335.)

As to the user by defendants of the water for over five years, that makes no difference; it is not the use, but the abuse of this user that we complain of. They have not pleaded any right to accelerate or retard the natural flow of the water; nor to throw sawdust or refuse bark into it. The rule of law is, that until plaintiffs sustained damage from the abuse of defendants' user, no claim of prescription would lie against them—the Statute of Limitations running, not from the date of the lawful use, but the unlawful abuse. (*Murtrugoza* v. *Robinson*, 7 Ellis & B. 391.)

We refer to the following authorities as showing the decisions of this Court as to water rights acquired by prior appropriation: (5 Cal. 145, 146; 6 Id. 108; 7 Id. 49, 262, 329; 8 Id. 336; 11 Id. 154; 12 Id. 47; 13 Id. 38, 233; 15 Id. 181; 3 Kent. 595.)

There are three legal maxims peculiarly applicable to this case: "*Qui prior est in tempore potior est in jure;*" "*Ubi jus ibi remedium;*" "*Sic utere tuo ut alienum non lœdas.*"

*John Reynolds,* for Respondents.

In the case cited by appellants' counsel, from 20 Barb. 644, the Court held, that it was no answer to the violation of a clear legal right, that the injury was nominal. So in this case, if the defendants had no right in common with the plaintiffs to use this water, then the finding that the injury was nominal would be no

answer, according to this authority. But in the case at bar, the defendants have a clear right to use the water for mill purposes, if they use it in a reasonable manner—if no actual and material injury results therefrom to the plaintiffs. And the defendants have a right to use the water for mill purposes in any manner they please, if no material injury results to the plaintiffs.

In the case of *Bear River Co.* v. *York Mining Co.* (8 Cal. 336), this Court say:

1st. The ditch owner is entitled to have the water flow, without material interruption, in its natural channel.

This right would seem to be compatible, in general, with the fair use of the water above.

2d. He is entitled to the water, so undiminished in quantity, as to leave sufficient to fill his ditch as it existed at the time the locations were made above.

In the case of *Butte Canal and Ditch Co.* v. *Vaughn* (11 Cal. 153), the Court say: " The first appropriator of the water of a stream passing through the public lands in this State, has the right to insist that the water shall be subject to his use and enjoyment to the extent of his original appropriation, and that its quality shall not be impaired so as to defeat the purpose of its appropriation. To this extent his rights go, and no further. In subordination to these rights, subsequent appropriators may make such use of the channel of the stream as they think proper."

The special findings show that the defendants used the water in subordination to these rights of plaintiffs; that no damage was done to the waters which materially affected the use of the water by plaintiffs for the purposes for which they had appropriated it.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to recover damages, and for an injunction to restrain the defendants, who are the owners of a sawmill on a stream, the waters of which the plaintiffs claim by prior appropriation for mining purposes, from interfering with the regular flow of water to plaintiffs' ditch, and from throwing sawdust and other refuse into the water, to the plaintiffs' injury. Special issues were

Phœnix Water Company *v.* Fletcher.

submitted to a jury, who returned the following special verdict: "First. At what time did the plaintiffs' grantors appropriate the waters of Sugar Pine Creek for mining purposes? Answer: March, 1852. Second. At what time were the waters of Sugar Pine Creek appropriated by defendants' grantors for mill purposes? Answer: July, 1852. Third. Is the injury inevitable, and can the defendants have and enjoy the mill in the place they do, without creating the injury? Answer: Yes. Fourth. Do defendants use the water in running their mill in a reasonable way, and if any injury is had to plaintiffs, is it nominal, merely? Answer: Yes." The plaintiffs moved for perpetual injunction, to restrain the defendants from doing the acts complained of; which the Court denied, and ordered that the restraining order, issued at the commencement of the action, be dissolved, and that the bill be dismissed with costs; from which judgment the plaintiffs appeal.

The injuries complained of are: first, that the defendants' dam, which is above the plaintiffs' ditch, causes the water to flow irregularly, at times holding it back, and suffering but a small quantity to flow to the plaintiffs' ditch, and at others letting it down in greatly increased quantity; second, that the sawdust and refuse bark of the sawmill is thrown into the stream by the defendants, clogging and filling the plaintiffs' ditches and reservoirs, and thereby diminishing their capacity to flow and hold water. The evidence shows that these are serious injuries to the plaintiffs, causing them considerable loss and damage; but after the evidence was closed, the plaintiffs' counsel stated to the Court and jury that they did not care about the amount of damages, and would consent that they should be considered as merely nominal, as the suit was brought for the purpose of protecting plaintiffs' rights, and not for the amount of damages. This may have induced the jury to find that the damages were merely nominal. The Court refused the injunction and dismissed the action, " on the ground that the dam was necessary for the defendants' mill, that the water was flowed into plaintiffs' ditch after its use by the mill, and that the injury was *damnum absque injuria;*" to which the plaintiffs excepted.

It is not controverted that the plaintiffs have a prior right to the use of the water of the stream, and that the defendants have done

and continue to do the acts complained of; and the real question is, whether the injuries are of such a character as to entitle the plaintiffs to a remedy by injunction, to restrain the defendants from the future commission of the acts complained of.

First, then, as to the injury caused by the irregularity of the flow of water. The importance of a regular flow of water to mining ditches is apparent. The profits of the business of mining depend, to a very great extent, upon a steady, constant supply of water, flowing with regularity to the reservoirs constructed to receive and hold it, and regularly distributed to the miners who depend upon it for their supply. The rule of law is well established, that the owner of hydraulic works on the stream above, has no right to detain the water unreasonably. He must so construct his mill, or other works, and so use the water, that all persons below him, who have a prior or equal right to the use of the water, may participate in its use and enjoyment without interruption. Still, a mere temporary or trivial irregularity in the flow of water, such as does not cause actual injury to the proprietor below, will not amount to an actionable injury. The question, in such cases, will turn upon the nature and extent of the injury. It is said that the proprietors above have a right to a reasonable use of the water; but the true test of this is, whether such use causes any positive or sensible injury to the prior appropriator or proprietor below, by diminishing the value of the right. (Angell on Water Courses, Secs. 115–118; *Merritt* v. *Brinkerhoof*, 17 J. R. 306; *Tyler* v. *Wilkinson*, 4 Mason, 401.)

In this case the jury found that the defendants could enjoy the mill in the place it was located, without creating injury; but the dam was necessary for the defendants' mill; evidently predicating its action upon the idea that if it was necessary for the use of the mill, the plaintiffs had no right to complain. This is clearly an erroneous view of the principles governing such cases, as we have already shown. It is true that the jury found that the defendants used the water in a reasonable way, coupled with a finding that the plaintiffs' damages were merely nominal. But, as already stated, the latter finding may have been predicated upon the statement of the plaintiffs' counsel that they would only ask nominal damages, as they were not the main object of the suit.

Besides, the third and fourth questions were submitted to the jury, at the request of the defendants, the plaintiffs' counsel objecting thereto, and one of the assignments of error is, that the Court erred in submitting them.   Each question submitted to a jury as a basis for a special verdict, should relate only to *one fact;* and grouping together several facts, as was done in these two questions, was very objectionable.   The evil of this practice is evident, when we consider the answer to the third question in this case, which is in the affirmative as to the two facts stated in the question.   The answer as to one of these facts, to be consistent, should be directly the contrary of the other.   They answer that the injury was inevitable, and yet the defendant could have enjoyed the mill without creating the injury.   Although the same contradiction does not exist in the answer to the fourth question, yet the two facts submitted therein should have been separated, and put in two questions instead of one.   The great difficulty in applying the principle of law to the case, arises from the manner in which those questions were framed and submitted.   The Court therefore erred in overruling the objection.

The next question is as to the right of action caused by throwing sawdust and refuse bark into the stream, causing damage thereby to the plaintiffs.   This kind of injury to water is a peculiar one, as, while the actual quantity of the water in the stream is not thereby materially diminished, yet these acts so affect the water as to materially diminish the quantity the plaintiffs are able to take from the stream and use for mining purposes.   Practically, it is well known to be a serious injury, very materially diminishing the value and profits of the ditch property.   As prior appropriators the plaintiffs are entitled to damages for such injuries, and to be protected from future loss.   The prior appropriator is clearly entitled to protection against acts which materially diminish the quantity of water to which he is entitled, or deteriorate its quality, for the uses to which he wishes to apply it.   This rule was applied to a case where sawdust from a mill was thrown into a stream near the City of Mobile, which injured the water for the use of the parties below.   (*Lewis* v. *Stein*, 16 Ala. 214.)   So it has been applied to a tanyard.   (*Howell* v. *McCoy*, 3 Rawle, 256.)   So to water corrupted

by mining operations. (*Magor* v. *Chadwick*, 11 A. & E. 571.) So to throwing dead animals in a spring. (*Tate* v. *Parrish*, 7 Monroe, 325.) In the case of *Hill* v. *King* (8 Cal. 336) and *The Bear River and Auburn Water and Mining Co.* v. *The York Mining Co.* (Id. 327), the question as to the liability of mining companies, on a stream above a ditch, for damages caused by mixing the water with mud and sediment, was examined, and one conclusion was that the prior appropriator below was entitled to the water so as to fill his ditch as it existed at the time of subsequent locations above; and that such subsequent locators had no right to so use the water as to diminish the quantity to which the prior appropriator was entitled.

The evidence shows that there was no necessity for throwing that refuse of the mill into the stream; and that prior owners of the mill wheeled it away; and the jury found that the defendant could enjoy the mill without creating the injury. The evidence also shows that these acts cause very material injury to the plaintiffs; but there is no finding of the Court or jury upon this important question. It is true that the Court gave, as a reason for dismissing the action, " that the injury was *damnum absque injuria ;*" but it would seem that this remark was intended to apply solely to the first ground of the action, to wit: the irregularity of the flow of water; but if it was intended to include also the acts we are now examining, then it is clearly contrary to the evidence. It is probable, however, that this reason was intended as an announcement of a principle of law, governing both classes of injuries complained of; and if so, it is clearly erroneous. So that in any view of the case, there is error in the proceedings of the Court below. In cases where special issues are submitted to a jury, it is important that they should include all questions of fact raised by the pleadings and necessary to determine the cause, and that they should be separately and distinctly stated. The record in this case is very defective in this respect. Not only are some of the questions objectionable for not stating the points separately, but several important issues were not submitted to the jury. Under these circumstances, the plaintiffs are entitled to a new trial.

The judgment is therefore reversed, and the cause remanded for a new trial.