Argued 20 May; decided 29 July; rehearing denied 16 December, 1901.

## CARSON v. HAYES.

[65 Pac. 814.]

EFFECT OF STIPULATION—WATERS.

1. In a suit by a lower and prior appropriator of water rights for mining purposes against an upper and subsequent appropriator to restrain defendant from interfering with the flow of a stream, the complaint alleging that plaintiff appropriated all the waters of the stream, a stipulation that there was no controversy about the validity of any of the water rights involved, and that plaintiff's rights were prior in time to those of defendant's, is an agreement that the plaintiff had appropriated the entire stream before any rights were initiated by defendant.

MINING—WATER RIGHTS—CREATING IRREGULAR FLOW.

2. A subsequent appropriator of water for mining purposes has no right to impound the water of the stream, and send it down at irregular intervals, and with an irregular flow, to a prior appropriator, who uses it for mining purposes, so as to cause him more than a temporary or trivial injury.

DEBRIS ON LOWER PROPRIETOR—INJUNCTION—MINES.

3. Every person located on a mining stream is entitled to a reasonable use of the channel and the water therein, and mining operations on the stream will not be enjoined because incidentally some debris is washed onto the land of lower proprietors; but upper proprietors have no right to use the bed of the stream as a dumping ground for their mining refuse and allow it to be carried onto the land of lower owners to their material injury.

IDEM.

4. Where an upper and subsequent appropriator of water for mining purposes on a stream makes use of the natural channel to carry off his mining debris, to the damage of the lower and prior appropriator, such lower appropriator may enjoin the continuance of such wrong, though the work of the upper miner be conducted carefully, and in the only feasible way of conducting mining business by him.

DUTY OF MINER IN DISPOSING OF DEBRIS.

5. Every mine owner must take care of his own mining debris, and he can not acquire a right to deposit refuse on another's land without his consent, either by directly depositing it thereon or by allowing it to be washed there by a stream.

WATERS—REQUISITE OF PRESCRIPTIVE CLAIM.

6. No right to the use of water can be acquired by prescription unless there has been such an invasion of the rights of the parties against whom it is asserted as would give them a cause of action therefor; thus, where the upper and subsequent appropriators of water for mining purposes on a stream had used such stream for carrying off their mining debris and refuse for a long period of time, but such use did little, if any, injury until two or three years before suit brought to restrain such use, defendants can not claim a prescriptive right to such use of the water: *Wimer* v. *Simmons*, 27 Or. 1, applied.

ESTOPPEL BY MERE SILENCE.

7. Mere silence while another is expending money or labor in the development of a burden on the plaintiff's property is not enough to estop him from en-

39 OR.—7.

joining the continuance of such burden; thus, where the upper and subsequent appropriators of water for mining purposes on a stream, who were not acting under any agreement with a lower owner, but on their own responsibility, expended large sums of money in developing mines and in the construction of hydraulic works and reservoirs, the silence of the lower owners of mining rights on such stream is not sufficient to estop them from asserting their right to an injunction restraining defendants from using the water of the stream, and dumping their mining debris therein to plaintiff's injury:' *Lavery* v. *Arnold*, 36 Or. 84, applied.

From Josephine : HIERO K. HANNA, Judge.

This is a suit by A. H. Carson and others against F. M. Hayes and others to restrain the defendants from interfering with the regular flow of the waters of Oscar Creek, and from permitting the debris from their placer mines to come down to, and be deposited in, plaintiff's ditches and reservoirs and on their mining ground. The plaintiffs are the owners of a mining claim through which Oscar Creek flows. The defendants Swinden and Burkhalter own a claim on the stream immediately above, and Hayes and Jewell own five claims just above and adjoining the latter claim. Oscar Creek carries but a small quantity of water, and, in order to get the benefit of it for sluicing purposes, it is necessary to place dams or storage reservoirs in the stream. These are so constructed that when the water reaches a certain height they are discharged automatically, letting the water down in heads or rushes through and over the material previously washed down by pipes and giants, carrying away the earth and debris through sluices. Some time prior to the commencement of this suit, Hayes and Jewell constructed a storage reservoir, fifty feet long and about five and one half feet high, across the stream, some two thousand feet or more above the upper line of plaintiff's claim, which they have ever since used in their mining operations for sluicing purposes. In 1898 they built on their own land, below their mining ground, two impounding dams, each forty to sixty feet long and three or four feet high, for the

purpose of retaining the debris from their mines, and thus preventing it from injuring parties below ; and put in below the lower impounding dam and above the claim of Swinden and Burkhalter a self-regulating dam, designed to prevent the water used by them from going down to the lower proprietors in "heads or rushes." A short time thereafter Swinden and Burkhalter constructed a storage reservoir forty-seven feet long and five feet high at or near the upper end of their claim, some seven hundred or eight hundred feet above plaintiff's claim, and used the waters accumulated thereby in sluicing out the material excavated by them, but made no provision whatever for retaining the debris on their own land, or for regulating the flow of water after it left their works. Plaintiffs take the waters of the creek through a ditch near the upper end of their claim. In January, 1899, they built a brush dam across the stream, some two or three feet high, for the purpose of diverting the water to their ditch and stopping the debris from the mines above.

The complaint alleges that in April, 1876, A. H. Carson and the predecessor in interest of the other plaintiffs located the mining claim owned by them, and at such time appropriated all the waters of Oscar Creek, conveying the same by ditch to their reservoir and mining grounds, and that they and plaintiffs have ever since used it in placer mining thereon ; that defendants, by means of dams and reservoirs in the channel of the creek above the plaintiff's mining claim, have so hindered and obstructed the flow of water as to cause it to come down in heads and rushes to the head of plaintiff's ditch, materially interfering with their use thereof, and have been discharging tailings or debris from their mines into the channel of the creek, which has been carried down by the force of the water onto the plaintiff's land, and into their ditches and reservoirs, to their great damage.

Separate answers were filed by the defendants Swinden and Burkhalter and by Hayes and Jewell, both denying the wrongful acts complained of by the plaintiffs. For an affirmative defense, Hayes and Jewell allege, in substance, that they and their grantors and predecessors in interest have for more than fifteen years prior to the commencement of this suit been continuously engaged in placer mining above the mine of the plaintiffs, and during all that time have used the waters and channel of the creek for mining purposes, and to carry off such portions of the silt or debris from their mines as could not be readily impounded or separated from the stream ; that during all such time the plaintiffs and their grantors have stood by, and seen the defendants and their predecessors in interest spend large amounts of money in operating and improving their mining properties, without making any objection whatever to their use of the waters of the stream for the purposes stated ; that their use of the waters and channel of the stream is necessary to the operation of their mines, and has always been in accordance with the custom and usage of miners in placer and hydraulic mining in like streams in Southern Oregon, and that in such use they have exercised every practical precaution to prevent any injury or damage whatever to the plaintiffs or to their property.

The defendants Swinden and Burkhalter, for an affirmative defense, allege that the plaintiffs and their predecessors in interest since 1894 have stood by, and without objection have seen them and their grantors and predecessors in interest spend large sums of money in opening up and developing their mining claim, and they ought, therefore, now to be estopped to allege or prove any right to the waters of the stream superior to those of the defendants. By way of counterclaim they allege that a dam constructed by plaintiffs in the winter of 1898 and 1899

across the channel of Oscar Creek caused its waters to overflow and submerge a large portion of their mining claim, to their damage in the sum of $500.

Replies were filed, putting in issue the allegations of the answers, and the cause was referred to a referee to take and report the testimony. Before any testimony was taken, however, a stipulation was entered into, whereby it was agreed : (1) "That there is no controversy in reference to the validity of any of the mining claims and water and ditch rights involved in this suit"; and (2) " that the location of the mining claim and of the water and ditch of the plaintiffs from Oscar Creek involved in this controversy is prior in point of time to the location of the mining claims and of the water rights and ditches and ditch rights of the defendants." The manner of the use by the parties of the water and channel of the stream was not affected by the stipulation. Upon the testimony as reported by the referee, a decree was rendered in favor of the plaintiffs, and defendants appeal. MODIFIED.

For appellants there was a brief and an oral argument by *Mr. A. C. Hough.*

For respondents there was a brief and an oral argument by *Mr. Geo. W. Colvig.*

MR. CHIEF JUSTICE BEAN, after making the above statement of the facts, delivered the opinion of the court.

1. It was insisted at the argument that the amount of water to which the plaintiffs are entitled by reason of prior appropriation is open to controversy in this suit; but, as we understand the record, that question is precluded by the stipulation of the parties. The complaint alleges that the plaintiff A. H. Carson and one Johnson appropriated all the waters of the stream in 1876, and

that they and their successors in interest have ever since used the same in placer mining. By the stipulation it is agreed that there is no controversy about the validity of any of the water rights involved in the suit, and that plaintiffs' rights are prior in time to those of the defendants. So we take it that upon this record the plaintiffs have a prior right by appropriation to all the waters of Oscar Creek.

2.   This leaves but two legal questions to be determined, so far as the issues tendered by the complaint are concerned :   (1) Can a subsequent appropriator of water for mining impound the water of a stream, and send it down at irregular times and intervals, at an increased or retarded flow, to a prior appropriator, who is using it for mining purposes, so as to damage or impair its use to him?   (2) Can an upper owner make use of the natural channel of the stream to carry off his mining debris, to the damage of the lower proprietor in the use and enjoyment of his claim, ditches, and mining works?   Both these questions must be answered in the negative. . The first appropriator of water is entitled to use and enjoy it to the full extent of his original appropriation, without diversion or interruption by subsequent claimants.   He has the right to insist that the water continue to flow to the head of his ditch or point of diversion substantially as it did when he made the first appropriation.   A mere temporary or trivial irregularity, which does not cause him any actual injury, would, of course, not be a cause of suit ; but, if the interruption is of such a character as to interfere with his use of the water, and cause sensible or positive injury to him, a suit may be maintained to enjoin the further commission of the wrong.  *Phœnix Water Co.* v. *Fletcher*, 23 Cal. 481, is in point.  That was an action to recover damages, and for an injunction to

restrain the defendants, who owned a sawmill on a stream the waters of which the plaintiffs claimed by prior appropriation for mining purposes, from interfering with the regular flow of water to plaintiffs' ditch, and from throwing sawdust and other refuse into the water to plaintiffs' injury. It was admitted that the plaintiffs had a prior right to the use of the stream, and that the defendants had done, and were threatening to continue, the acts complained of; the only question being whether the injuries were of such a character as to entitle the plaintiffs to a remedy by injunction. The decree was in favor of the plaintiffs, and in discussing the question the court say: "The importance of a regular flow of water to mining ditches is apparent. The profits of the business of mining depend to a very great extent upon a steady, constant supply of water, flowing with regularity to the reservoirs constructed to receive and hold it, and regularly distributed to the miners who depend upon it for their supply. The rule of law is well established that the owner of hydraulic works on the stream above has no right to detain the water unreasonably. He must so construct his mill or other works, and so use the water, that all persons below him, who have a prior or equal right to the use of the water, may participate in its use and enjoyment without interruption. Still, a mere temporary or trivial irregularity in the flow of water, such as does not cause actual injury to the proprietor below, will not amount to an actionable injury. The question, in such cases, will turn upon the nature and extent of the injury. It is said that the proprietors above have a right to a reasonable use of the water; but the true test of this is whether such use causes any positive or sensible injury to the prior appropriator or proprietor below by diminishing the value of the right." See, also, Gould, Waters (3 ed.), § 229; Kinney, Irr. § 249.

3. Referring to the other question, the law seems to be that every person located on a mining stream is entitled to a reasonable and proper use of the channel and water, and that a court of equity will not restrain mining operations because, as a mere incident thereto, some sand and tailings happen to be washed upon the land of a lower proprietor : *Atchison* v. *Peterson*, 87 U. S. (20 Wall.) 507 ; *McCauley* v. *McKeig*, 8 Mont. 389 (21 Pac. 22). But such locator has no legal right to dump his mining debris into the channel of the stream, and allow it to be carried by the water down to the land of the lower proprietor, to his injury. "No person, natural or artificial," says the Supreme Court of California, "has a right, directly or indirectly, to cover his neighbor's land with mining debris, sand, and gravel, or other material, so as to render it valueless" : *Hobbs* v. *Amador & Sac. Canal Co.* 66 Cal. 161 (4 Pac. 1147). And in *People* v. *Gold Run D. & M. Co.* 66 Cal. 138 (4 Pac. 1152, 56 Am. Rep. 80), the same court said : "Undoubtedly, the fact must be recognized that in the mining regions of the state the custom of making use of the waters of streams as outlets for mining debris has prevailed for many years, and as a custom it may be conceded to have been founded in necessity, for without it hydraulic mining could not have been economically operated. In that custom the people of the state have silently acquiesced, and upon the strength of it mining operations involving the investment and expenditure of large capital have grown into a legitimate business, entitled equally with all other business pursuits in the state to the protection of the law. But a legitimate private business, founded upon a local custom, may grow into a force to threaten the safety of the people and destruction to public and private rights ; and when it develops into that condition the custom upon which it is founded becomes unreasonable, because

dangerous to public and private rights, and can not be invoked to justify the continuance of the business in an unlawful manner. Every business has its laws, and these require of those who are engaged in it to so conduct it as that it shall not violate the rights that belong to others. Accompanying the ownership of every species of property is a corresponding duty to so use it as that it shall not abuse the rights of other recognized owners.''

4. Nor is it any defense to such an invasion of the rights of a lower proprietor that the work of the upper miner was conducted cautiously and carefully, and in the only feasible way of conducting mining business by him. ''A placer miner has the right to deposit tailings in a running stream to a reasonable extent, but not the right of depositing tailings and debris upon the land of one below him in such an amount as to substantially injure and ruin the same ; and the rule is not changed by the fact that the mining operation could not be successfully carried on without inflicting the injury'': *Fitzpatrick* v. *Montgomery*, 20 Mont. 181 (63 Am. St. Rep. 622, 50 Pac. 416). And Mr. Lindley says : ''The miner is entitled to use his claim in a lawful manner, but no use can be considered lawful which precludes' others from enjoying their rights. However cautiously or carefully the miner works is of no consequence, for, if his work in fact injures another, he is none the less liable. The doctrine of necessity, which has been frequently invoked in justification of injuries of this character, has no application'': 2 Lindley, Mines, § 843.

5. The doctrine of the authorities is that each mine owner or proprietor must take care of his own mining debris, and he can acquire no right, by custom or otherwise, to use the land of his neighbor as a dumping ground,

without his consent, either by carrying and depositing the debris thereon, or by casting it into the stream, and allowing it to be washed down by the force of the current : Black, Pom. Water Rights, § 82 ; *Columbus, etc. Iron Co.* v. *Tucker*, 48 Ohio St. 41 (29 Am. St. Rep. 528, 26 N. E. 630) ; *Lincoln* v. *Rodgers*, 1 Mont. 217 ; *Hill* v. *Smith,* 4 Morrison, Min. Rep. 597 ; *Logan* v. *Driscoll*, 6 Morrison, Min. Rep. 172 ; *Esmond* v. *Chew*, 15 Cal. 137 ; *Robinson* v. *Black Diamond Coal Co.* 57 Cal. 412 (40 Am. Rep. 118); *People* v. *Gold Run. D. & M. Co.* 66 Cal. 138 (4 Pac. 1152, 56 Am. Rep. 80).

6. It is urged, however, that the defendants have acquired a right by prescription to so use the stream and dispose of the debris and tailings from their mines. The evidence in support of this contention shows, in substance, that some time about 1882 one Custar located a part, if not all, of the claims now owned by the defendants Hayes and Jewell, and mined the same each year, with the waters of Oscar Creek, down to 1891, when he sold his interest to the defendant Hayes. But there is no evidence in the record tending to show that in his use of the water or disposition of the debris from his mines he in any way interfered with the rights of the plaintiffs, or any of them ; neither is there any evidence showing or tending to show that any of the debris from the mining operations on the stream above the plaintiffs' claim was carried thereon prior to the establishment by Hayes of his hydraulic works in 1892, and the plaintiffs suffered but little, if any, injury until the operation of the Swinden and Burkhalter mine during the season of 1898 and 1899. The law is well established that no right to the use of water can be acquired by prescription unless there has been such an invasion of the rights of the parties against whom it is asserted as would have given them a

cause of action therefor : Kinney, Irr. § 294 ; *Huston* v. *Bybee*, 17 Or. 140 (20 Pac. 51, 2 L. R. A. 568); *Wimer* v. *Simmons*, 27 Or. 1 (39 Pac. 6, 50 Am. St. Rep. 685); *Grigsby* v. *Clear Lake Water Co.* 40 Cal. 396 ; *Anaheim Water Co.* v. *Semi-Tropic Water Co.* 64 Cal. 185 (30 Pac. 623); *Alta Land & Water Co.* v. *Hancock*, 85 Cal. 219 (24 Pac. 645, 20 Am. St. Rep. 217). So there are no facts shown by the record upon which to base defendants' claim to a prescriptive right to so use the waters of the stream as to make a dumping ground of plaintiffs' land for their mining debris.

7. It is said that plaintiffs made no objection to the expenditure of large sums of money by the defendants in opening up and developing their mines and in the construction of hydraulic works and reservoirs for the operation thereof. But the mere silence of the plaintiffs is not sufficient to estop them from now asserting their rights because of such expenditures by the defendants : *Lavery* v. *Arnold*, 36 Or. 84 (57 Pac. 906, 58 Pac. 524). They were not acting under any license or agreement with the plaintiffs, but upon their own responsibility, and the plaintiffs had a right to assume that they did not intend by the operation of their mine to interfere with any of their rights. We conclude, therefore, that upon the law of the case the plaintiffs are entitled to an injunction restraining interference with the natural flow of the waters of the stream, and preventing mining debris from being carried down and deposited in their ditches, reservoirs, and upon their land.

It only remains to examine the facts to ascertain whether any of these rules of law have been violated by the defendants. It is quite clear from the testimony that during the mining season of 1898 and 1899 the regular flow of the waters of Oscar Creek was interrupted to the sub-

stantial injury of the plaintiffs, and that the debris from the mines above was carried down the stream, filling their mining ditch and reservoir to such an extent as to materially interfere with the operation of their mine. Mr. Wright, who made a survey and examination of the premises a short time before the commencement of this suit, testified that he found the ditch and reservoir of plaintiffs' mine nearly full of debris, and that on the upper portion of their claim he found and measured a deposit of mining debris which was from fifty to eighty feet wide and one to three feet deep, extending down the channel of the creek about fourteen chains. Mr. Wood Jeter, who worked for the plaintiffs, said that the water came down at times in such quantities that the plaintiffs' ditch could not carry it, and it overflowed, and carried gravel and slickens into plaintiffs' reservoir, until it would not work without being cleaned out almost every day. To the same effect is the testimony of W. P. and Clyde Jeter and the witnesses York and Slagle. L. W. Carson, one of the plaintiffs, testified that the defendants used the waters of the creek by holding it in reservoirs, and discharging it through their pipes, and letting off large "heads" through the ground sluices ; that the tailings "come on down the creek, and lodge on our claim, * * * and fill up our ground sluice and our ditch leading from Oscar Creek to the reservoir, and they fill up the reservoir so it makes it almost impossible to keep it working * * * on account of the large heads coming down and filling up our ditch and overflowing and running the tailings into the reservoir and choking the working of it"; and A. H. Carson, that defendants operated their mines by washing down large quantities of gravel, rock, and sand into the bed of the stream with their pipe and giant, from which they washed out the debris by letting off heads of water from the reservoirs above amounting to one thousand five

hundred or two thousand inches at a time, thus carrying down the gravel, stone, and sand into the head of plaintiffs' ditch, submerging it, and filling it up so that it was impossible to use it; that the channel of the creek, at the upper end of plaintiffs' claim, and below for about sixty rods, is filled up with gravel, stone, and sand from the mines above. There is other testimony in the record substantially to the same effect, and the only difficult question upon the facts is whether the injury to the plaintiffs was caused by all the defendants, or by the operation of Swinden and Burkhalter's mine alone.

The contention is made in behalf of Hayes and Jewell that the two impounding dams constructed in 1898 have been sufficient to hold and retain all of the debris from their mines since that date, and that the regulating reservoir constructed the same year has caused the water to flow on down the stream without interruption. As to whether the impounding dams and the regulating reservoirs have accomplished the purpose intended by their construction, the evidence is conflicting, some offered on behalf of the plaintiffs tending to show that they are of no practical utility. It seems to us, however, that the preponderance of it upon this branch of the case is in favor of the defendants Hayes and Jewell. The regulating reservoir is so constructed that all the water must pass through a flume in the bottom, three feet wide and twelve inches deep; and the testimony shows that, notwithstanding it had been used during one mining season, the saw marks on the boards of which it was built still remained, which, the witnesses say, would not be the case if any considerable quantity of mining debris had passed through the flume. In addition to this, numerous witnesses testified to having examined the bed of the stream above Swinden and Burkhalter's claim, and below Hayes and Jewell's impounding dam, and found no mining

debris therein. The defendants Burkhalter and Swinden both stated that, after the construction of the impounding dams and regulating reservoir by Hayes and Jewell, no debris or tailings from the mines of the latter came down to their claim, and that the regulating reservoir so checked the force of the water as to cause it to come down to their mine in a natural flow, on account of which they were compelled to erect their impounding reservoir to obtain sufficient heads of water to enable them to operate their mine. Upon the whole testimony, it seems to us that the injury suffered by the plaintiffs, and of which they complain, was due to the mining operations of Swinden and Burkhalter, who, it is admitted, made no provision whatever for caring for their mining debris.

It is insisted, however, that all the damage to the plaintiffs was caused by the construction of their own dam across the stream near the head of their ditch, and that, but for such dam, the mining debris would have gone down through their claim, and into Applegate Creek. But this contention overlooks the fact that the plaintiffs had a right by appropriation to divert all the waters of the stream, in which case there would be no water below the head of their ditch to carry off the mining debris; and, besides, in any event, plaintiffs had a right to construct a dam to prevent the tailings from injuring their property: *Nelson* v. *O'Neal*, 1 Mont. 284. Wo conclude, therefore, that the court below was in error in entering a perpetual injunction against the defendants Hayes and Jewell, and to that extent the decree ought to be modified; but a decree should be entered here restraining the defendants Swinden and Burkhalter from the further operation of their mine until they have made suitable provision to prevent injury to plaintiffs' mine and water rights.

MODIFIED.

Mr. Justice MOORE, did not sit in this case.