FOLKES GIBSON AND THOMAS D. WEBSTER *v.*
FREDERICK PUCHTA.

RIGHTS OF POSSESSION TO PUBLIC MINERAL LAND.—Where the title of the respective parties to public mineral lands is based on possession alone, the older possession, as between the two, gives the better right; and this, although the use to which the older possessor appropriated the land was for agricultural purposes, while the younger possession was for mining purposes.

RIGHTS OF MINERS AND AGRICULTURALISTS IN PUBLIC MINERAL LANDS.—Where the plaintiffs, who were miners, did not seek to enter or occupy, for mining purposes, the lands of the defendant, devoted to agriculture, but sought to restrain him from flowing water thereon for the purpose of irrigation, by which their adjacent mining claims were injured, the plaintiffs cannot claim any authority, rights, or privileges in the premises under the Act of April 25th, 1855. (Stats. 1855, p. 145.)

IDEM.—In such a case, the plaintiffs' rights depend upon the principles and rules of the common law, applicable to adjoining land owners, where the one complains that he has sustained an injury by the acts of the other, done on his own land. In irrigating his land, the defendant is subject to the maxim *sit utere tuo ut alienum non lædas.*

IDEM.—In such a case, the defendant has the clear right to irrigate, as well as to cultivate and plant, his land, and an action cannot be maintained against him for a reasonable exercise of his right, although the plaintiffs may suffer annoy-

arice or injury thereby.  He would be responsible to plaintiffs only for injuries caused by negligence or unskilfulness, or those wilfully inflicted in the exercise of said right.

APPEAL from the District Court, Tenth Judicial District, Sierra County.

This was an action to restrain the defendant from running water upon plaintiffs' mining claims, and for damages sustained thereby.  The facts are set forth in the findings of fact made by the Court trying the cause without a jury. The defendant had judgment, and the plaintiffs appealed upon the judgment roll alone.  The findings of fact and conclusions of law of the Court below are as follows, to wit:

" This cause was tried by the Court without the intervention of a jury, and now from the pleadings and evidence I find the following facts:

" First—The ground described in plaintiffs' complaint is public mineral land of the United States, and contains mines of gold, and has been mined for gold, more or less, every year since 1851.

" Second—Said ground was originally located in four parcels, adjoining each other, by different companies, for mining purposes, in 1852.  The company locating that parcel highest up the river was known as the ' Perseverance Company;' the next below as the ' Curry Company;' the next as ' Michigan Company;' and the next, and farthest down the river, as the ' Out and In Company.'

" Third—The plaintiffs acquired the claims of all these companies by purchase as follows: The Perseverance claims on July 6th, 1863; the Curry claims on December 5th, 1862; and the Out and In claims and the Michigan claims on December 2d, 1863.  And plaintiffs have been mining on some portion of the ground during all the time it has been workable since the spring of 1863.

" Fourth—Plaintiffs traced their title to the Out and In ground and the Michigan ground in an unbroken chain in

their predecessors from the fall of 1858; and to all the other ground described in their complaint from the spring of 1861. And plaintiffs have been in possession of each of the four different parcels from the date of its purchase.

"Fifth—The ground is situate on a flat, adjoining the south side of the river, and gradually rises as it approaches the mountain. A portion of the ground next the river, or front ground, as it is called, has been mined and worked from the top down; but the bank formed by so mining it has become so high, and the boulders are so large, that the only practicable mode of working the remainder of the unworked ground, next the mountain, is by tunneling under it, and portions of it have been mined by means of such tunnels for several years.

"Sixth—About the 1st of May, 1866, the plaintiffs started a new tunnel under that portion of the ground known as the Out and In ground, and run it under said ground in the usual and only practicable way to mine the same, and run it about forty-five or fifty feet under said Out and In ground, when they were driven out by water, as hereafter stated.

"Seventh—In the summer of 1858 the defendant's predecessors fenced in a portion of the back ground of said claims for grazing and agricultural purposes, and cleared off about three quarters of an acre thereof, on which they planted and cultivated cabbage and other vegetables, and have continued to raise vegetables thereon every year since, except in 1862 and 1863.

"Eighth—During the winter of 1865-6, and the spring of 1866, the defendant cleared off about one acre more of ground on the back part of said mining claims, and adjoining the ground before cleared and cultivated, and built a new and more substantial fence around the whole lot.

"Ninth—On the 25th day of January, 1866, whilst defendant was clearing off said last mentioned parcel and building the last named fence, the plaintiffs notified him that he must not run any water on said mining claims, for any purpose whatever.

" Tenth—But defendant continued to completion said clearing and fencing, and in the spring following planted the newly cleared ground, and a part of the old, in potatoes; and on or about the 16th of July following, for the purpose of irrigating said potatoes, diverted from Snake Bar Ravine, which bounds plaintiffs' said mining claims on the east, a sufficient quantity of water for irrigating said potatoes, and turned the same on the back part of the ground planted in potatoes, and run it across said ground towards the river.

" Eleventh—No part of plaintiffs' said tunnel was directly under the ground planted in potatoes, nor within less than one hundred feet thereof, but the water then run upon said potatoes as aforesaid by the defendant, percolated through the ground and came out in said tunnel, then being worked and mined by plaintiffs, in such quantities as to prevent the plaintiffs from working or mining therein. The extreme back end of said tunnel is thirty-five to forty feet under the surface of the ground.

" Twelfth—That defendant continued to run said water on said potato ground from the time he commenced till the middle of October, 1866, and said water during all that time continued to percolate through said ground and run into said tunnel in such quantities as to prevent the plaintiffs from working or mining in said tunnel until after the said 15th day of October, 1866, and did prevent the plaintiffs from working or mining therein during all the time said water was being run on said potato ground as aforesaid.

" Thirteenth—That but for the running of said water on said potato ground as aforesaid, plaintiffs could have worked and mined in said tunnel during all the time said water was run on said ground as aforesaid.

" Fourteenth—That by reason of the premises, the plaintiffs have sustained damages in the sum of two hundred and fifty dollars.

40

" The conclusions of law from the foregoing facts are, that the plaintiffs are not entitled to the relief prayed for."

Judgment was entered for the defendant.

*Vanclief & Cowden,* for Appellants.

The decision and judgment of the Court are unwarranted by and inconsistent with the findings of fact.

On the findings of fact this Court should order judgment for the appellants for two hundred and fifty dollars damages, and a perpetual injunction against respondent, as prayed for in plaintiffs' complaint.

Appellants' possession of the land and mining claims described in their complaint, was prior to that of the respondent—said claims having been located in 1852, by four different companies, and the appellants having acquired the claims of those companies by purchase—the respondent's agricultural right to a small portion of the land having accrued in the summer of 1858, but to the greater portion not until the winter of 1865–6.

Whether the appellants' possession was prior or not, they are still entitled to recover, since the land is public mineral land, and the appellants entered and took possession for mining purposes, and at the time of the commission of the wrongs complained of were mining the same " in the only practicable mode," and were prevented from so mining by said wrongful acts.

Appellants were not in the position of those doing injury to growing crops, as they were mining about forty feet below the surface, and not directly under the potato patch ; besides, they notified respondent, long before his potatoes were planted, " not to run any water on said mining claims for any purpose whatever." All former crops, if any, had then been harvested. (Hittell's Laws, Art. 4,848.) To the point that priority of possession would not help respondent, we cite the following authorities : Hittell's Laws, Art. 6,790;

*Stokes* v. *Barret*, 5 Cal. 36; *McClintock* v. *Beyden*, 5 Cal. 97; *Burge* v. *Smith*, 14 Cal. 380; *Smith* v. *Doe*, 15 Cal. 101; *Clark* v. *Duval*, 15 Cal. 85; *Martin* v. *Browner*, 11 Cal. 12.

We think the facts found authorize a judgment for appellants, as prayed for.

*James A. Johnson*, and *W. Cain*, for Respondent.

Plaintiffs base their claim to relief chiefly upon the supposed right of the miner to the free use of the public mineral lands. Our ranch right, including the right to use water thereon, was in the Court below admitted to be prior to any right of plaintiffs, but it was insisted there as here, that because we are on public mineral lands, our rights are inferior to theirs. The defendant has as much right to the use of the public lands of the United States as have plaintiffs, and unless our statutes have changed the rule, the general common law regulating private rights must prevail. If the rule remains unchanged, our right being prior, and as we did nothing negligently, carelessly, unskilfully, or wilfully, but worked our land in a proper manner, we should not be enjoined or mulcted in damages. *Humphries* v. *Brogden*, 1 E. L. & L. 241, is a most complete history of the law on this subject; also, to the same point are *Jeffries* v. *Williams*, Ib. 433; and *Smart* v. *Morton*, 30 Ib. 386. But if, as plaintiffs claim, the statute (Act of April 25th, 1855,) has application to the case at bar, yet they can assert no rights under it, because they have not complied with any of the conditions of the Act. (See *Henshaw* v. *Clark*, 14 Cal. 463; *Smith* v. *Dole*, 15 Cal. 104; also, *Gillan* v. *Hutchinson*, 16 Cal. 155.)

By the Court, RHODES, J.:

The title of the respective parties is derived from possession and appropriation of the land, being public mineral land. The plaintiffs trace their title back to the fall of 1858; and the defendant's possession commenced in the summer of the same year. We understand that the small tract cleared off by the defendant during the winter of 1865–6 and the spring of 1866, was parcel of the larger tract, of which he took possession in 1858. This gives the defendant the better title. The plaintiffs' tunnel did not extend to within a hundred feet of the grounds planted in potatoes by the defendant. The defendant diverted the water of an adjacent ravine and turned upon his ground a sufficient quantity to irrigate the crop of potatoes. The water percolated through the ground and came out through the tunnel, in such quantities as to prevent the plaintiffs from working therein.

The plaintiffs did not enter or desire to occupy the lands in the possession of the defendant for the purpose of mining, and they are not, therefore, entitled to claim any authority, right or privilege conferred or attempted to be conferred by the Act of April 25th, 1855. (Stats. 1855, p. 145.) If the plaintiffs are entitled to a judgment for damages, or to an injunction to restrain the commission of further injuries, their right depends upon the principles and rules of the common law, applicable to cases between adjoining landholders, where the one complains that he has sustained an injury by the acts of the other, done on his own land. The defendant had the undoubted right to cultivate and plant this tract of land; and having planted it, there can be as little question that he had the same right to irrigate it for the purpose of maturing his crop. In irrigating his land the defendant is subject to the maxim *sic utere tuo ut alienum non lœdas*. An action cannot be maintained against him for the reasonable exercise of his right, although an annoyance or injury may thereby be occasioned to the plaintiffs. He is responsible to

the plaintiffs only for the injuries caused by his negligence or unskilfulness, or those wilfully inflicted in the exercise of his right of irrigating his land.  (Broom Legal Max., 274.) There is no pretence that any injury was wilfully occasioned by the defendant, and there is no finding of negligence or unskilfulness on the part of the defendant.

The plaintiffs, therefore, are not entitled to judgment on the findings.

Judgment affirmed.