(April 12, 1906.)

JOSIAH HILL and J. S. HILL, Appellants, v. THE STANDARD MINING COMPANY, RICHARD WILSON, WALTER MACKAY, JAMES LEONARD, WILLIAM R. LEONARD, and A. L. SCOFIELD, Copartners Doing Business Under the Firm Name of the MAMMOTH MINING COMPANY, Respondents.

[85 Pac. 907.]

ACTION FOR DAMAGES—WHEN COMPLAINT IS SUFFICIENT—COSTS.

1. When a complaint states fully and concisely the nature of the damage, amount, and that it was caused by the unlawful, wrongful and negligent acts of the defendant, *held,* that it states a cause of action.

2. When an appeal is prosecuted from a judgment on an order sustaining a demurrer to the complaint, no costs can be awarded to appellant, excepting the necessary costs in presenting such appeal.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District for Shoshone County.    Hon. R. T. Morgan, Judge.

Plaintiffs sued for $12,000 damages.    Defendants demurred; demurrer sustained.    Judgment for costs in favor of respondent.    *Reversed.*

A. G. Kerns, for Appellants.

The complaint shows a continuing, growing and destructive public nuisance, specially injurious to plaintiffs, and threatening to become more destructive, and the cause of action is stated in plain and concise language.    A complaint need not negative the lawfulness of an obstruction or its continuance, or that it was unavoidable.    These are matters of defense to be set up by answer.    (Gould on Waters, sec. 122; Estee's Pleadings, sec. 2025; *Wolf v. St. Louis Ind. Water Co.,* 15 Cal. 319.)

It may be convenient or economical for an operator to throw the refuse of his mines into a stream; but that is not enough. He is bound to consider the rights of others. He takes the risk of injuring others to save trouble and expense to himself. (2 Lindley on Mines, 840.)

The doctrine of the authorities is that each mine owner or proprietor must take care of his own mining debris, and he can acquire no right, by custom, or otherwise, to use the land of his neighbor as a dumping ground, without his consent, either by carrying and depositing the debris thereon, or by casting it into the stream and allowing it to be washed down by the force of the current. (*Carson v. Hayes*, 39 Or. 97, 65 Pac. 814; *Fitzpatrick v. Montgomery*, 20 Mont. 181, 63 Am. St. Rep. 622, 50 Pac. 416; *Hobbs v. Amador & S. C. Co.*, 66 Cal. 161, 4 Pac. 1147; *Elder v. Lykens Valley Coal Co.*, 157 Pa. St. 490, 37 Am. St. Rep. 742, 27 Atl. 545; *Pompelly v. Green Bay Co.*, 13 Wall. 166, 20 L. ed. 557.)

The injury is a continuing one, covering a period of several years, and still existing and growing.

Lapse of time bars a recovery for a completed offense only. (*Ingersoll v. Rousseau*, 35 Wash. 92, 76 Pac. 513.)

The statute of limitations must be pleaded by answer. (Rev. Stats., sec. 4213.)

Laches is a matter of defense to be pleaded by the respondents. And it is only when, by the delay and neglect to assert the right, the adverse party has been lulled into doing that which he otherwise would not have done, or into omitting to do that which he otherwise would have done, had the right been promptly asserted, that laches will be considered as a defense. (*Carson v. Hayes*, 39 Or. 97, 65 Pac. 814, 817.)

C. W. Beale, for Respondents.

Where a nuisance is of a permanent character, any damage that may result therefrom is an original damage, and may be at once fully compensated, and the statute of limitations immediately begins to run on any action for damages. (*Powers*

*v. Council Bluffs,* 45 Iowa, 652, 24 Am. Rep. 792; *Stodghill v. Chicago etc. R. Co.,* 53 Iowa, 341, 5 N. W. 495; *Chicago etc. R. Co. v. Loeb,* 118 Ill. 203, 8 N. E. 460; *Chicago etc. R. Co. v. McAuley,* 121 Ill. 160, 11 N. E. 67; *Bizer v. Ottumwa Hydraulic Power Co.,* 70 Iowa, 145, 30 N. W. 172; Gould on Waters, sec. 416; *Barnard v. Shirley,* 135 Ind. 547, 41 Am. St. Rep. 454, 34 N. E. 605, 35 N. E. 117.)

When the members of the convention that framed our constitution incorporated therein that in organizing mining districts the use of the public waters for mining and milling purposes should be a preferential use, they recognized thereby the absolute necessity of the use of such waters in concentrating plants.

For any injury that may result from the exercise of a lawful right, the law does not offer any relief. (3 Elliott on Evidence, sec. 1971.)

Where the maxim (*sic utere tuo ut alienum non laedas*) is applied to landed property, it is subject to a certain modification, it being necessary for the plaintiff to show, not only that he has sustained damage, but that the defendant has caused it by going beyond what is necessary in order to enable him to have the natural use of his own land. (*West Cumberland Iron Co. v. Kenyon,* L. R. 6 Ch. Div. 773; *Penn. Coal Co. v. Sanderson,* 113 Pa. St. 126, 57 Am. St. Rep. 445, 6 Atl. 457; *Barnard v. Shirley,* 135 Ind. 547, 34 N. E. 604, 35 N. E. 117.)

This court has repeatedly held that in damage cases it is necessary not only to plead and prove negligence on the part of the defendant, but also to plead and prove a want of negligence on plaintiff's part. Applying that ruling to the case at bar the pleadings of the plaintiffs in the lower court never stated a cause of action. (*Haner v. Northern Pacific R. Co.,* 7 Idaho, 305, 62 Pac. 1028; *Sheldon v. Rockwell,* 9 Wis. 166, 76 Am. Dec. 265.)

A court of equity declines to exert its powers to relieve one who has been guilty of laches. (*Whitney v. Fox,* 166 U. S.

637, 647, 648, 41 L. ed. 1145, 17 Sup. Ct. Rep. 713; *Gildersleeve v. New Mexico Min. Co.*, 161 U. S. 573, 582, 40 L. ed. 812, 16 Sup. Ct. Rep. 663; *Abraham v. Ordway*, 158 U. S. 416, 423, 39 L. ed. 1036, 15 Sup. Ct. Rep. 894; *Ware v. Galveston City Co.*, 146 U. S. 102, 116, 36 L. ed. 904, 13 Sup. Ct. Rep. 33; *Foster v. Mansfield Cold Water etc. R.*, 146 U. S. 88, 102, 36 L. ed. 899, 13 Sup. Ct. Rep. 28; *Hoyt v. Latham*, 143 U. S. 553, 36 L. ed. 259, 12 Sup. Ct. Rep. 568; *Hanner v. Moulton.* 138 U. S. 486, 495, 34 L. ed. 1032, 11 Sup. Ct. Rep. 408; *Richards v. Mackwell*, 124 U. S. 183, 189, 31 L. ed. 396, 8 Sup. Ct. Rep. 437; *Penn. Mutual Life Ins. Co. v. Austin*, 168 U. S. 685-697, 42 L. ed. 626, 18 Sup. Ct. Rep. 223; *Lane & Bodley Co. v. Locke*, 150 U. S. 193, 37 L. ed. 1049, 14 Sup. Ct. Rep. 78; *Mackall v. Cassilear*, 137 U. S. 556, 34 L. ed. 776, 11 Sup. Ct. Rep. 178; *Galliher v. Cadwell*, 145 U. S. 368, 36 L. ed. 738, 12 Sup. Ct. Rep. 873; *Hammond v. Hopkins*, 143 U. S. 224, 36 L. ed. 134, 12 Sup. Ct. Rep. 418; *Willard v. Woods*, 164 U. S. 502, 41 L. ed. 531, 17 Sup. Ct. Rep. 176.)

Whatever title the plaintiffs have in their land is subject to the vested water rights of the respondents and their use of such waters in their mining and milling operations; and said plaintiffs cannot be heard to complain at this time. They not only had personal knowledge of what the respondents were doing, but whatever title they may have to the premises, under the act of Congress, and the decision of the supreme court interpreting the same, is subject to the vested and accrued rights of said respondents to continue in their mining and milling operations unhampered and undisturbed. (*Broder v. Water Co.*, 101 U. S. 276, 25 L. ed. 790.)

To entitle plaintiffs to recover for injuries sustained from a public nuisance, they must first allege in their complaint facts clearly showing that they have sustained special or peculiar damages—damages different in kind and character from the rest of the public, so that such damage cannot fairly be said to be a part of the common injury resulting from such nuisance. (*Stufflebeam v. Montgomery*, 2 Idaho, 763-770, 26 Pac. 125.)

STOCKSLAGER, C. J.—This is an appeal from a judgment rendered and entered on an order sustaining a demurrer to the complaint. It was the third effort of learned counsel for appellant to allege a cause of action against the defendants for damages to their lands located on the South Fork of the Coeur d'Alene river in Shoshone county. The complaint alleges:

"1. That at all the times hereinafter mentioned, the defendant, Standard Mining Company, was, and now is, a corporation duly organized and existing under the laws of the state of Idaho.

"2. That at all the times hereinafter mentioned the defendants were copartners doing business under the firm name of the Mammoth Mining Company.

"3. That during the three years prior to the commencement of this action the defendants, as such mining partners, cast about five hundred and fifty thousand tons of waste material, consisting of rock, earth, sand, stone, slime and poisonous substances of lead and arsenic, into Canyon creek, a tributary of the South Fork of the Coeur d'Alene river, ten miles above the lands of the plaintiffs hereinafter described, thereby filling the banks and polluting and defiling said stream; and by the natural flow of waters of said Canyon creek said waste material so negligently cast into said stream by the defendants has been washed, carried, and deposited into the South Fork of the Coeur d'Alene river aforesaid, thereby polluting and defiling said stream and filling the banks thereof; and by the natural flow of the waters of said river said waste material has been washed and carried down said stream, and thereby causing the waters of said South Fork of the Coeur d'Alene river, at high water, during the aforesaid period of three years, prior to the commencement of this action, to overflow the natural banks of said stream where the same passes over, along, through and across the lands of plaintiffs hereinafter described, and wash, carry, spread and deposit over and across the said lands of the plaintiffs portions of said waste material so cast into Canyon creek by the defendants as aforesaid,

thereby poisoning the said lands of the plaintiffs, so covered with waste, for agricultural, grazing, farming, townsite and residence purposes, and poisoning and rendering the well water on said premises unfit for any use, and killing and blasting fruit trees, vines, groves and other vegetation thereon, and rendering the use and occupation of said premises as a home dangerous to the health of the plaintiffs.

"4. That the plaintiffs are now, and at all the times since the month of March, 1886, have been, in the possession and entitled to the possession of and the owners of the following described parcels of land situated along, contiguous and adjacent to said South Fork of the Coeur d'Alene river, to wit": Here follows full description of plaintiffs' land.

The defendants, Standard Mining Company, James Leonard, and A. L. Scofield, demurred to this complaint, to wit:

"1. That said amended complaint does not state facts sufficient to constitute a cause of action.

"2. That said amended complaint is uncertain in this:

"(a) That it does not state any facts constituting carelessness or negligence or unskillfulness on the part of the said defendants, or any or either of them or on the part of any authorized agent or representative of said defendants or any or either of them.

"(b) That it does not state any act or admission on the part of said defendants, or any or either of them, or on the part of any authorized agent or representative of said defendants, or any or either of them, constituting negligence or carelessness.

"(c) That it does not appear therefrom of what value the lands mentioned therein were for agricultural, grazing, farming, townsite or residence purposes, or of what value said lands were for any purpose whatever.

"(d) Nor does it appear therefrom when or during what years any of the waste material mentioned therein was washed, carried, spread or deposited over, upon or across the lands of the plaintiffs mentioned therein, or how much

damage, if any, was caused thereby to the lands, or how much to the vegetation growing thereon.

"(e) Nor does it appear therefrom the date when said lands or any thereof were poisoned or destroyed for agricultural, grazing, farming, townsite or residence purposes, or the date when the fruit trees, vines, groves or other vegetation growing thereon, were killed and blasted, or the date when said premises were rendered unfit or dangerous as a home, or unfit or dangerous at all.

"(f) Nor does it appear therefrom the date when any of said lands were injured, poisoned or destroyed or the date when any crops or vegetation whatever growing thereon were injured or destroyed, or killed or blasted, prior or subsequent to the date of the injury or destruction of said lands or any part thereof.

"(g) Nor does it appear therefrom how said lands could be poisoned or destroyed and at the same time be of any value for agricultural, grazing or other purposes whatever, or how any crops, vegetables, fruit trees, vines or groves could be killed, poisoned, blasted or destroyed upon said lands subsequent to the date of the destruction thereof.

"(h) Nor does it appear therefrom what damage, if any, the lands of the plaintiffs suffered by the casting of waste material into Canyon creek; how much by the overflow of the South Fork of the Coeur d'Alene river; how much by the pollution of the waters of the South Fork of the Coeur d'Alene river; or how much by the high water of the said South Fork of the Coeur d'Alene river.

"Wherefore, said defendants pray the judgment of this honorable court that they be dismissed hence with their costs in this behalf sustained."

The complaint above referred to was filed June 30, 1905. The demurrer and affidavit of service thereof were filed July 6, 1905, and judgment for costs entered December 16, 1905, the above demurrer having been theretofore sustained.

By the record it is shown that the first complaint in the action was filed September 30, 1903, in which practically

the same allegations are contained as are shown by the third amended complaint which is before us for determination as to its sufficiency for a recovery of damages. After innumerable motions to quash the summons and service thereof, together with affidavits in support of the various motions, also motions to quash and set aside the alias summons and the service thereof with affidavits in support thereof, extending from page 15 to 85 of the record, the defendants demurred to the complaint; this demurrer was filed June 21, 1904, and sustained December 30, 1904. On the thirty-first day of December, 1904, plaintiffs filed what is termed their second amended complaint, in which all the allegations of the complaint and the amended complaint are alleged together with some additional allegations. A motion to strike this complaint from the files was overruled on the twenty-ninth day of May, 1905. On the twelfth day of June, 1905, a demurrer was filed, which was sustained on the twenty-second day of June, 1905, and plaintiffs given until June 30, 1905, in which to file an amended complaint. On that date plaintiffs filed their third amended complaint, the sufficiency of which is now under consideration. The reasons for the history of this case, together with the various motions, demurrers, rules and orders, will hereafter be discussed in this opinion.

After a statement in justification of all the rulings of the court with reference to its actions in quashing summons, alias summons and other orders made in the earlier history of this case, learned counsel for respondents say:

"We next come to the only question involved in this appeal, and that is as to the right of the appellants to maintain their alleged cause of action against respondents."

An inspection of the record, pleadings and proceedings in this case leads us to the conclusion that this statement is correct. In other words, if the appellants are entitled to recover damages in any amount, the complaint is sufficient to put defendants on their proofs, and the demurrers should have been overruled and defendants required to answer.

It is earnestly urged by counsel for respondents that if this court should hold that there is error in sustaining the demurrers to the complaints, or either of them, it would result in "the depopulation of Shoshone county, the abandonment of all mining and milling therein, and the consequent bankruptcy of the inhabitants thereof." Deplorable as this might be—if true—it furnishes no excuse for the court to shirk its responsibilities in disposing of the question before us on its merits. The law is no respecter of persons, corporations or individuals, and in its creation and enforcement reaches out and protects the lone settler in his rights, let them be ever so meager, as well as the capitalist, the corporation or individual with its or his millions. If the law protects the appellants in their settlement on the public domain of the lands described in plaintiff's complaint for agricultural or other purposes, then their rights are as sacred and require the same application of the law and the same protection as is guaranteed to every citizen of this great nation and commonwealth. The law does not measure the rights of litigants by the amount involved, nor the manner in which it may affect others not parties to the litigation. It only deals with the questions as presented by the pleadings, and in this case if the plaintiffs can recover under any conditions or circumstances, then that right to recover cannot be measured by the damage defendants or others residing in Shoshone county may sustain by reason thereof. It is not a matter of sentiment, but what is the standing of the plaintiffs as shown by the pleadings, and have the defendants trespassed upon any rights guaranteed to them by the constitution and laws of our state? With this view we will examine the law applicable to the cause.

Mr. Gould, in his excellent work on Waters, section 122, says: "The general rule is that individuals are not entitled to redress against a public nuisance. The private injury is merged in the common nuisance and injury to all citizens, and the right is to be vindicated and the wrong punished by a public prosecution, and not by a multiplicity of separate

actions in favor of private persons. If, however, a public nuisance, such as an unlawful obstruction to a common passage, causes peculiar damage to an individual, he may maintain an action therefor. In such case, the declaration or complaint need not negative the lawfulness of the obstruction, or its continuance for a reasonable length of time, or that it was unavoidable because of inevitable accident, these being matters of defense to be set up by answer. But the particular damage is the gist of the action, and must be specially set forth in the declaration or complaint.'' This seems to us to be a very clear and concise statement of the law and is founded in justice and reason. Applying the rule laid down by this learned author to the case at bar, we find the appellants in the undisputed possession of the property described in their complaint, that said property is rendered valueless for agricultural, grazing, farming, townsite and residence purposes, poisoning and rendering the well water unfit for use, killing and blasting fruit trees, vines, grass and other vegetation thereon, and that plaintiffs were in such possession of said premises in March, 1886, and are at the present time in quiet and peaceable possession.

Counsel for respondents cites section 3, article 15, of our constitution, which reads: ''The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall (subject to such limitations as may be prescribed by law) have the preference over those claiming for any other purpose. And those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes. And in any organized mining district, those using the water for mining purposes, or milling purposes connected with mining, shall have preference over those using the same for manufacturing or agricultural pur-

poses.'' We cannot see the application of this provision of our constitution to the case at bar. Appellants do not complain of the use of the waters of Canyon creek by respondents for mining and milling purposes. The complaint is that respondents cast enormous quantities of debris and poisonous substances into Canyon creek which follows the channel of that stream down to its confluence with the South Fork of the Coeur d'Alene river, and thence carried down that stream and deposited on the lands of plaintiff, thus causing the injury for which they ask to be compensated in damages. There is nothing in this provision of the constitution, nor in any of its provisions, that authorizes or permits parties engaged in mining or any other occupation to fill up the natural channel of any of the public streams of the state to the injury of any other user of the waters of the stream. Our constitution wisely provides that all the public waters of the state and their use shall be under the control of the state. (Art. 15, sec. 1.)

Counsel for respondents, with commendable energy and force, both in his brief and oral argument, insists that his clients were exercising a lawful right granted them by the constitution and laws of the state in the use of Canyon creek as a dumping ground for the debris of their mines, and in support of this theory quotes all of section 1971, volume 3, of Mr. Elliott's excellent work on Evidence. If the contention of respondents is to be accepted as the law of this state—that is, that they have the right to use the public streams as a dumping ground for the debris of their mines— then this learned author sustains their contention. It will be observed that the text is based wholly on the theory that ''such injury resulted to the complainant from the proper and careful exercise of a lawful right on the part of defendant.'' The author further says: ''This rule has been variously stated as follows: An act done under a lawful authority, if done in a proper manner, will not, as a general rule, subject the party doing it to an action for the consequences which may follow from it.'' If it was the

intention of the framers of our constitution when they provided that "in organized mining districts those using water for mining purposes or milling purposes connected with mining, shall have preference over those using the same for manufacturing or agricultural purposes," that the mine or mill owner should have exclusive use not only of the water, but the stream for dumping the debris of their mines and mills irrespective of the damage it might cause to others with vested rights in the waters of such stream, then the plaintiffs could not frame a complaint that would not be subject to demurrer. The question of the preference right of the mine or mill owner over the manufacturer or agriculturist to the use of water has never been before this court to our knowledge, and in this case plaintiffs do not question the right of the defendants to the use of the waters of Canyon creek for mining and milling purposes; the complaint is that they cast large quantities of debris and poisonous substances from their mines and mills into Canyon creek, which, by natural consequences, flow down that stream and finally over and upon their lands, which by reason thereof are rendered valueless. Hence it is not a question as to who shall have the preference right to the use of the water between the parties to this action, but how shall the respondents use it, or have they the right to dump the waste from their mines and mills into the stream regardless of the results to lower occupants of the lands for agricultural or other purposes. This court has repeatedly held that an appropriator could not change his place of diversion of the waters of any stream if such change in any manner affected a lower appropriator of the waters of such stream, even though the lower appropriator be subsequent in right. The reasons for such conclusion, it seems to us, are well founded. Where the lower appropriator makes his appropriation he has the right to assume the upper appropriator will continue the use of the water as he found it, and if any change would damage him in the use of his appropriation, the courts will protect him in his rights.

When respondents located their mines and erected their mills on or near Canyon creek and began to cast the waste from either into such stream, they assumed all risk of damages to anyone below on that stream or any stream to which it is tributary who were in possession of property that might be damaged by such use of such stream at the time they began the use thereof for such purpose. It is urged that it is not shown by the complaint that appellants ever made an appropriation of the waters of Canyon creek or the South Fork of the Coeur d'Alene river of which it is tributary. Appellants are not complaining that they have been deprived of their use of water by respondents; they complain of the wrongful use of Canyon creek by respondents, not of the water, but of the stream for dumping purposes. So far as the record shows, appellants' land may produce crops by subirrigation, hence never necessary to make an appropriation of any of the waters of the streams. In support of his contention that respondents have the right to use Canyon creek for dumping their waste from their mills and mines, counsel cites *Gibson v. Puchta,* 33 Cal. 310. In this case all the land in controversy was mineral land; one party cleared off a portion of his claim and planted it to potatoes; in the irrigation of his crop the water percolated through and into the mining tunnel of plaintiffs, and they sought to restrain him from such use of his land. The court says: "The defendant had the undoubted right to cultivate and plant this tract of land; and having planted it, there can be as little question that he had the same right to irrigate it for the purpose of maturing his crop. In irrigating his land the defendant is subject to the maxim, *'Sic utere tuo ut alienum non laedas.'* An action cannot be maintained against him for the reasonable exercise of his right, although an annoyance or injury may thereby be occasioned to the plaintiffs. He is responsible to the plaintiffs only for the injuries caused by his negligence or unskillfulness, or those willfully inflicted in the exercise of his right of irrigating his land." The facts in this case differ very materially from the case at bar. De-

fendant had a lawful right to plant and cultivate his crops, so says the court, and he could only be held for a willful, negligent or unskillful manner of handling the water used for such purpose. If, in the case at bar, it were shown by the complaint that respondents were using the waters of Canyon creek for mining and milling purposes, that after such use the water percolated back into the creek, carrying sediments or debris of any kind with it, and plaintiffs' lands were injured by such use of the water, it is possible that a demurrer should be sustained, unless it is shown that such use was willful and negligent. Counsel calls our especial attention to *Bernard v. Shirley*, 135 Ind. 547, 41 Am. St. Rep. 454, 34 N. E. 605, 35 N. E. 117. He says this case "supports in every detail the position taken by counsel for the respondent." We reproduce his entire quotation: "The foregoing case of *Coal Co. v. Sanderson* and the reasoning of the court seem to be clearly in point with the case at bar. In both cases the owners cause water to rise from the earth, to become foul, and then to be carried by an artificial drain, and discharged into a running stream, the natural watercourse of the basin or valley in which the water rises, and into which stream the water would naturally flow if left to itself. In both cases the owners were engaged in a lawful and necessary work of great advantage to mankind at large, and particularly to the community in which they operated; the one in mining out of the earth and distributing coal for heating and industrial uses, and the other also taking out of the earth mineral water for healing and curing the infirm. Both were free from fault or negligence in conducting their business, and in avoiding, so far as possible, all injury to others; the injury in each case being but the necessary incident of a lawful business. In each case there was no other place but the stream for the water to go, so that, if it were unlawful to discharge the water into the stream, then the enterprise itself would be at a standstill, and a lawful business thus come to an end because it could not be lawfully carried on." We have no such facts before us as were dis-

closed and described in the above quotation. If the facts do exist in this case, in order that it may be brought within the rule laid down above, it can only be done by answer. A statement of the existence of such facts in a demurrer or orally by counsel for respondents will not answer the allegations of the complaint, hence these authorities have no application in the present status of this case.

Again, counsel quotes from a decision of Judge Beatty in *McCarty v. Bunker Hill and Sullivan Min. etc. Co.* Counsel says: "This is what Judge Beatty had to say upon a decision rendered by him last June in a denial of an application for a restraining order to close the mines and mills of Shoshone county: 'Without detailing the reasons, such order would mean the closing of every mine and mill, of every shop, store, or place of business in the Coeur d'Alenes. There are about twelve thousand people, the majority of whom are laboring people dependent upon the mines for their livelihood; not only would their present occupation cease, but all these people must remove to other places, for the mines constitute the sole means of occupation, and when they finally close, Wallace and Wardner, Gem and Burke and their surrounding mountains will again become the abode only of silence and wild fauna. Any court must hesitate to so act as to bring such results.' " We are not informed of the precise question that was before Judge Beatty, only as stated by counsel for respondent. It will be observed from this statement that it was an "application for a restraining order to close the mines and mills of Shoshone county." No such application is before us; no prayer or demand that the mines and mills of Shoshone county be closed, or that respondents be enjoined from running their mills and mines.

Counsel for respondent insists that the complaint is lacking in a charge of willful or negligent acts on the part of respondents. We find in paragraph 3 of the complaint before us, after stating that respondents had "cast about five hundred and fifty thousand tons of rock, earth, etc., into Canyon creek, a tributary of the South Fork of the Coeur d'Alene

river, about ten miles above the lands of the plaintiffs hereinafter described, thereby filling the banks and polluting and defiling said stream; and by the natural flow of the waters of said Canyon creek said waste material so negligently cast into said stream by the defendants has been washed, etc.,'' down to and upon plaintiffs' land, causing damage in the sum of $12,000. No intimation that they want to enjoin the operation of the mines and mills, but a demand that they be paid for damages they have sustained by the operation of such mills and mines, and there is an allegation that the debris from such mills and mines was negligently cast into a natural stream of the state; that they have been damaged thereby. And again, in paragraph 7 of the complaint it is alleged that defendants ''have wrongfully, and unlawfully, etc., cast and deposited rock, earth, stone, tailings, slime and poisonous substances, etc., into said Canyon creek.''

Counsel next cites *Haner v. Northern Pac. Ry. Co.*, 7 Idaho, 305, 62 Pac. 1028. This was an action against the defendant for the value of a cow alleged to have been negligently killed by one of defendants' locomotives. The complaint alleges that ''the cow was killed because of the negligent and careless running of a locomotive and train of cars.'' The first clause of the syllabus says: ''Where the complaint alleges negligence only in the running, managing and operating a locomotive and train of cars, the right of recovery is limited to the negligence alleged.'' Applying this rule to the case at bar, all that can be claimed for it is that the plaintiffs would be confined in their proofs to the allegation of negligence as used in the complaint, and we have already said the allegation of negligence was sufficient as used in the complaint. If respondents are able to establish by proof all the facts they set up in their demurrer they may be able to convince a jury that the plaintiffs should not recover, but in our view of the case it will be necessary for them to answer the complaint and meet the issue in that way rather than by demurrer. We are not without authority in this conclusion.

In *Drake, Exr. of McKirk, Deceased, v. Lady Easley Coal etc. R. Co.*, an Alabama case reported in 102 Ala. 501, 48 Am. St. Rep. 77, 14 South. 749, 24 L. R. A. 64, the question discussed and decided was very similar to the one before us. The court held that "the pollution of the waters of a stream by washing iron ore, whereby the water is laden with refuse and debris, rendering it unfit for stock and drinking purposes, and causing the deposit of a sediment upon portions of the farm of a lower proprietor, is an actionable injury to such proprietor." This quotation is from the first clause of the syllabus and is fully borne out in the opinion. In the body of the opinion it is said: "It is not more agreeable to the laws of nature that water should descend than it is that lands should be farmed and mined. The plaintiff had no right to insist upon his receiving waters which nature never appointed to flow there." It is further said: "Under the provisions of the constitution, private property cannot be taken for public use or for corporations without just compensation being first made to the owner, except by consent. The courts—and it was never intended to be otherwise understood—are not 'masons' to 'chisel' away vested rights of property or private individuals, however humble or obscure the owner, for the benefit of the public or great corporations. It is the pride of this republic that no man can be deprived of his property without due process of law, and the poorest citizen can find redress for an unlawful injury caused by his wealthy neighbor by appealing to the courts of his county."

A large number of cases supporting this contention are cited in the footnote entitled, "How far stream may be polluted for mining purposes."

Mr. Lindley in his valuable work on Mines, at section 843, says: "While the deposit of mine tailings in running streams to a reasonable extent is permitted, subject to the limitations outlined in the preceding sections, the doctrine never has been extended so as to authorize the miner to flood his neigh-

bor's lands, and by depositing thereon mining debris and 'slickens' deprive such neighbor of any substantial right or depreciate the value of his property." Again, "No person, natural or artificial, has a right, directly or indirectly, to cover his neighbor's land with mining debris, sand or gravel, or other material so as to render it valueless." The above is a quotation from *Hobbs v. Amador etc. Canal Co.*, 66 Cal. 161, 4 Pac. 1147, *Carson v. Hayes*, 39 Or. 97, 65 Pac. 814. Again, the author says: "While the miner is entitled to the free use of the channel for the purpose of carrying away his waste and tailings, he has no right to fill the channel with debris, causing the stream to overflow, and thus deposit the material on the lands of the lower proprietor. The miner is entitled to use his claim in a lawful manner, but no use can be considered lawful which precludes others from enjoying their rights," citing authorities. The author's discussion of this question, together with the authorities collected and cited, will be found quite interesting and useful.

*Woodruff v. North Bloomfield Gravel Min. Co.*, 18 Fed. 753, 9 Saw. 441, is a well-considered case written by Judge Sawyer, and concurred in by Deady, J., Circuit Court, District of California The leading cases bearing on the subject before us are discussed. We will only quote the nineteenth clause of the syllabus which is as follows: "In granting relief where the complainant's rights are certain, and the invasion of them is clearly established, a court of equity cannot consider the inconvenience which will result to defendants from the relief, nor is it the province of the court to speculate upon or to consider or to suggest any possible modes by which defendants may avoid the injurious consequences of their acts, or to decide upon the conflicting opinions of scientific experts concerning the possibility or sufficiency of such suggested modes. The only duty of the court is to grant the relief to which the complainant is entitled upon the law and facts of the case." The first article and section of our constitution provides as follows: "All men are, by nature, free and equal, and have certain inalienable rights, among which are enjoying and defending

life and liberty; acquiring, possessing and protecting property, pursuing happiness, and securing safety.'' The right to the use of a stream for depositing debris from mines is discussed in section 840, volume 2, of Lindley on Mines. Many cases from the various states of the Union are cited and discussed by the author. He closes his text as follows: ''No positive rule of law can be laid down to define and regulate such use with entire precision. As to this, all courts agree. It is a question of fact to be determined by the jury.'' This conclusion certainly seems reasonable and logical. If all counsel for respondent says in his demurrer, brief and oral argument is true, he should plead it in answer and submit the questions of fact to a jury. So says Mr. Lindley, and the decisions of nearly all of the states of the Union to which our attention has been called.

Mr. Cooley, in his valuable work on Torts, second edition, page 675, discusses the question of deposits upon land. We quote the following: ''So it is a nuisance if a riparian proprietor shall cast into the stream earth, sand, and refuse of his business, or other things, which by the flowing water are carried and deposited upon the land of a proprietor below. The tort here consists in the act of committing the rubbish to the stream; the deposit upon the land below is only the consequence from which a cause of action in favor of a particular individual arises.'' A large number of American decisions are cited by the learned author in support of this text. A great many authorities have been cited by counsel for appellants as well as respondents that have not been discussed or referred to in this opinion. They have all been examined, and those only upon which respective counsel rely for a decision favorable to their contention have been quoted from and discussed.

Counsel for respondent insists that plaintiff's action is barred by the statute of limitations; that is not true, as shown by the pleadings; a continuing injury or damage such as is alleged to have existed in this case is not barred. The plaintiffs

could have commenced their action when the damage first developed, or they may wait until their property is entirely destroyed and rendered valueless for any purpose, and then sue to recover the value of the property in damage. Counsel also insists that plaintiffs should not recover in this action by reason of their laches. *Carson v. Hayes,* 39 Or. 97, 65 Pac. 814-817, we think fully answers this contention. We quote from that opinion as follows: ''It is said that plaintiffs made no objection to the expenditures of large sums of money by the defendants in opening up and developing their mines, in the construction of hydraulic works and reservoirs for the operation thereof. But the mere silence of the plaintiffs is not sufficient to stop them from now asserting their rights, because of such expenditures by the defendants. They were not acting under any license or agreement with the plaintiffs, but upon their own responsibility; and the plaintiffs had a right to assume that they did not intend by their operation of their mine to interfere with any of their rights.''

The bar of the statute of limitations, as well as the laches of the plaintiffs, can be raised by an answer, and in that way all the facts brought before the court for determination.

The judgment is reversed, with instructions to overrule the demurrer and to require the defendants to answer within —— days, respondents to pay all costs of this appeal, except one hundred and ten pages of the transcript, which must be paid by appellants, being no part of the record necessary to present the appeal.

Sullivan, J., concurs.

AILSHIE, J.—The nature of the argument employed in the majority opinion and the conclusion at which such a course of reasoning would inevitably arrive, led me to express briefly the grounds of my concurrence. While the burden of the complaint really seems to be that the waters of the stream have become poisoned from their use in the milling and concentrating processes employed by defendants, still I think there is

sufficient stated in the complaint to constitute a cause of action for wrongfully dumping and depositing rock, earth, sand and waste material into the stream and filling up the natural channel of the stream, and thereby causing the same to wash over and upon the lands of the plaintiff. There seems to me to be a wide difference between the natural pollution or poisoning of waters which may necessarily and unavoidably result from the employment of the usual processes of reducing ores, and the dumping of rock, earth and debris into the channel of a stream and filling up and thereby causing it to overflow and flood the lands of others.

It should be remembered in this case that the plaintiff claims no right whatever to the use of any of the waters of the stream. The riparian doctrine, which prevails in most of the states, having been abrogated in this state, the plaintiff is in no position to insist that the waters of this stream should flow down to and through his lands in their natural condition and state. He may insist, however, that they shall not be diverted from their natural channel in such a manner as to be poured in floods over his lands.

There is no doubt in my mind but that the defendants were exercising a legal right guaranteed to them both by the constitution and statute when they were applying and using the waters of Canyon creek in milling and concentrating the ores taken from their mines. It is equally clear that any poisonous matter which may dissolve in and mingle with the water as a necessary and unavoidable result of the usual method of working and reducing such ores must be regarded in law as resulting from the exercise of a lawful right, for the effects of which no damage can be recovered. Lumber and grain may be transported to any point for manufacturing purposes; livestock may be taken to any place for slaughter, but mines must be worked where mineral can be found, and it must follow from the very nature of the things and the requirements of the conditions that what would constitute either a nuisance or trespass in conducting and operating the one industry might be the exercise of a lawful right in operating the other. If A

should erect and operate a soap factory on a lot alongside my residence, he would depreciate the utility, comfort and value of my property, and I would have my right of action because he could establish his business at a place where he would not injure me; but if he should bore and tap oil or natural gas on the same premises, he would thereby render my home value-less and uninhabitable, and still I should have no right of action against him, for the reason that he can neither remove his oil or gas well nor find it elsewhere.   In *Barnard v. Shirley,* 135 Ind. 555, 41 Am. St. Rep. 460, 34 N. E. 605, 35 N. E. 117, the supreme court of Indiana, in discussing this principle of law, said: "Mines and mineral springs, natural gas and oil wells, cannot be removed.   They must be operated where they are, or totally abandoned.   Where, therefore, a work is lawful in itself, and cannot be carried on elsewhere than where nature located it, or where public necessity requires it to be, then those liable to receive injury from it have a right only to demand that it shall be conducted with all due care, so as to give as little annoyance as may be reasonably expected, and any injury that may result notwithstanding such care in the management of the work must be borne without compensation.   It is then a case in which the interests and convenience of the individual must give way to the general good."   For authorities in line with this view, see *Pennsylvania Coal Co. v. Sanderson,* 113 Pa. St. 126, 57 Am. Rep. 445, 6 Atl. 453; *Gibson v. Puchta,* 33 Cal. 310; *West Cumberland Iron Co. v. Kenyon,* [1879] 11 Ch. Div. 782, 48 L. J. Ch. 793; 3 Elliott on Evidence, sec. 1971.

The framers of our constitution, when adopting section 3, article 15, were  mindful of the fact that in some sections of this state agriculture would predominate, and that the use of the waters for such purpose must have a preference right, while in other sections, as in the Coeur d'Alenes, mining would be the principal industry, and they accordingly ordained that a preference right to the use of the water should follow the prevailing industry.   It must be conceded that the members of the constitutional convention understood the meaning of

the word "milling," and the manner and method of using water for such purpose when they embodied that term in the organic law of the state. It would follow that in an agricultural section a miner would not be permitted to use the waters of an irrigation stream in milling and concentrating ores if the result would be to poison or pollute the water so as to injure growing crops on irrigated lands below.

As previously indicated, I do not conceive it necessary to the successful operation of a milling and concentrating plant that thousands of tons of rock, earth and debris should be dumped into the stream from which water is taken. But if it should be shown that no other dumping ground could be had, then it would seem clear that diligence and care should be exercised in impounding such debris.