**LUAMA v. BUNKER HILL & SULLIVAN MINING & CONCENTRATING CO. et al.**

No. 6109.

Circuit Court of Appeals, Ninth Circuit.

June 16, 1930.

Fred B. Morrill and J. W. Merritt, both of Spokane, Wash., for appellant.

C. W. Beale, of Wallace, Idaho, for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

This is an action brought by the appellant to recover for damages done to his real estate and live stock by the deposit on his land by the flood waters of the Coeur d'Alene river of tailings and débris resulting from the mining operations of the appellees in the

Coeur d'Alene Mining District in Shoshone county, state of Idaho. It is alleged that these tailings are deposited in or near the South fork of the Coeur d'Alene river, and were deposited upon the plaintiff's land by the high water of the Coeur d'Alene river overflowing the banks of said river spreading over the plaintiff's land. It is alleged that the tailings and mining débris, by reason of its mineral and foreign ingredients, pollutes and poisons the waters of the stream so that, when carried upon the lands of the plaintiff, rendered them unfit for agriculture, grazing, and farming purposes, killing the vegetation thereon, and rendering the water unfit for domestic use, reducing the value of the plaintiff's low land from $125 per acre to $10 per acre and depreciating the value of the higher lands as well. Plaintiff's crops were damaged in the sum of $1,500 each year for the years 1924, 1925, 1926, and 1927, a total of $6,000 damage. It is alleged that the operations of the defendants have been carried on for about twenty years. Defendant, in reply, sets up an instrument executed the 17th day of October, 1910, by Joseph M. Brown, who was then owner of the real estate subsequently conveyed by Brown to appellant. This agreement purported to convey to the appellees the right to do exactly what they have done, namely, to dump the tailings from their mines and mining operations conducted in the counties of Shoshone and Kootenai, state of Idaho, into the waters of the Coeur d'Alene river, and the South fork of the Coeur d'Alene river, and also to deposit such tailings along the banks of the stream. The agreement, among other things, contained the following provisions:

"And whereas, the said party of the first part claims that by the depreciation in the value of said property and the loss of crops, and in the disease, sickness, loss and death of certain domestic animals including horses and cattle, he has been in the past and will be in the future damaged by reason of the past and future mining and milling operations in the counties of Shoshone and Kootenai, State of Idaho, of the said parties of the second part and the use of the waters of the Coeur d'Alene River and the South Fork of the Coeur d'Alene River and its tributaries in such mining and milling operations and in the dumping of the tailings, waste material and debris from such mining and milling operations into and the transportation and carrying away of the same by the waters of the said Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries: * * *

"The said party of the first part does by these presents grant, bargain, sell, convey, and confirm unto the said parties of the second part and to their successors, heirs, executors, administrators and assigns forever, the right and privilege to carry on and continue in the said counties of Shoshone and Kootenai any and all mining and milling operations in which they or any of them may engage in said counties or either of them, and the right and privilege of dumping any tailings, waste material or debris that may result from such mining and milling operations into the said Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries or along the banks thereof, and of having such tailings, waste material and debris transported and carried away by the said waters of the Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries; and the said property of the said party of the first part and each and every part thereof is hereby made subject to and charged with the said mining and milling operations of the said parties of the second part in the past, and the said use of the said waters of the Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries in said operations, and in the said transportation and carrying away of said tailings, waste material and debris by said waters, and also with all the mining and milling operations in the future of the said parties of the second part and their successors, heirs, executors, administrators and assigns, and the said privilege of dumping the tailings, waste material and debris that may result from such mining and milling operations into the said Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries and along the banks thereof, and the use of the waters thereof in such mining and milling operations, and for the transportation and carrying away of all said tailings, waste material and debris that may result from all such mining and milling operations both in the said county of Shoshone and the said county of Kootenai, State of Idaho; and in further consideration of the payment of said sum, the said party of the first part, does hereby release said parties of the second part and their successors, heirs, executors, administrators and assigns from all damages and claim of damages in the future on account of any injury or damage to said property and every part thereof and the loss of and damage to any and all crops upon the above described property and the sickness, disease, loss and death of any and all domestic animals thereon, which may be caused by

such mining and milling operations of the said·parties of the second part and their successors, heirs, executors, administrators and assigns, and the dumping of such tailings, waste material and debris as may result from said mining and milling operations into the said Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries and along the banks thereof, and the use of the said waters of the Coeur d'Alene River, the South Fork of the Coeur d'Alene River and its tributaries in such mining and milling operations and for the transportation and carrying away of all such tailings, waste material and debris that may result therefrom in the said county of Shoshone and the said county of Kootenai, State of Idaho.

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof."

Appellant concedes that, if the agreement in question conveyed an easement on the lands then owned by Brown and now owned by the appellant, he cannot recover in this action, and that the only question involved is whether or not such an easement was so created. A similar agreement was considered by the Circuit Court of Appeals of the Eighth Circuit in Schwab v. Smuggler-Union Mining Co., 174 F. 305, 311, in a case arising in Colorado and decided March 18, 1909. The agreement in that case was between owners of certain placer mining claims using the waters of the San Miguel river which had been impounded in reservoirs and conveyed therefrom through flumes and steel pipes for the purpose of washing down gravel and carrying on its placer mining operations, and the owners of a quartz mill which distributed its slimes and tailings into the San Miguel river or tributaries thereof above the aforesaid reservoir. The agreement waived future damages for the deposit of such tailings for the consideration therein named, and also provided that the contract should be binding upon the successors of each of the parties thereto. The mortgage upon the Keystone Mining Company's property was foreclosed; the quartz mining company, Smuggler-Union Mining Company, was not a party to the decree. By reason of this transfer it became necessary to consider whether or not the agreement created an easement. The court held that such agreement created an easement in the land of the Hydraulic Mining Company, stating as follows:

"We think the agreement granted to the defendants an easement to have the slimes and tailings from their mills flow through the flumes, pipes, sluices, and reservoirs upon the properties of complainant in question, and, as a natural incident thereto, upon his said lands, and that such interest of the defendants was not affected by the foreclosure decree and sale; they not being parties thereto."

The land of the appellant described in his complaint is apparently riparian to the Coeur d'Alene river, although it is not so specifically alleged in the complaint. One of the rights of the riparian owner is to receive the flow of the stream, without unreasonable pollution, from the riparian owners above him on the stream. 2 Kinney on Irrigation and Water Rights (2d Ed.) 2065, § 1140, 2085, § 1146, 2086, § 1147; Hill v. Smith, 27 Cal. 476, and Id., 32 Cal. 166; Robinson v. Black Diamond Coal Co., 57 Cal. 412, 40 Am. Rep. 118; Hobbs v. Amador, etc., Co., 66 Cal. 161, 4 P. 1147; Holmes v. Ney, 186 Cal. 231, 199 P. 325; Woodruff v. North Bloomfield Gravel Min. Co. (C. C.) 18 F. 753; Fitzpatrick v. Montgomery, 20 Mont. 181, 50 P. 416, 63 Am. St. Rep. 622; Bunker Hill & Sullivan Min. & Con. Co. v. Polak (C. C. A.) 7 F.(2d) 583; Hill v. Standard Mining Co., 12 Idaho, 223, 85 P. 907. See, also, McCarthy v. Bunker Hill & Sullivan Min. & Coal Co. (C. C.) 147 F. 981; Id. (C. C. A.) 164 F. 927; Parker v. American Woolen Co., 195 Mass. 591, 81 N. E. 468, 10 L. R. A. (N. S.) 584; Arizona Copper Co. v. Gillespie, 230 U. S. 46, 33 S. Ct. 1004, 57 L. Ed. 1384. An agreement to modify this relationship by an increased burden upon the lower riparian owner in favor of the upper riparian owner would seem clearly to constitute an easement in the land of the lower riparian owner. If the land of the appellant were not riparian to the stream, the right granted to deposit tailings in the upper waters of the South fork of the Coeur d'Alene river and subject the lower land to the consequences resulting therefrom if and when the lands were overflowed, would, under the principle enunciated in Schwab v. Smuggler-Union Mining Co., also be an easement. In the latter case the tailings were conveyed onto the property of the lower land owner by diverting dams, reservoir, and pipe-line owned by the lower owner. The resulting injury to the land and its appurtenances was agreed to be suffered by the owner thereof, and this agreement was held to be an easement burdening the land in the hands of subsequent purchasers as dis-

tinguished from a personal covenant binding only upon the person making the contract.

Judgment affirmed.