MONTANA CO., Limited, v. GEHRING.

(Circuit Court of Appeals, Ninth Circuit. June 19, 1896.)

No. 245.

1. WATER AND WATER COURSES—APPROPRIATION FOR IRRIGATION—SUBSEQUENT APPROPRIATION FOR MINING.

The right of one who has appropriated water for the purpose of irrigating his land is not interfered with by a subsequent appropriation by another for mining purposes, at a point further up the stream, unless such use impairs the value of the water to the prior appropriator for the particular purpose of his appropriation, namely, that of irrigation.

**2. SAME—DAMAGE BY TAILINGS AND DEBRIS.**

An appropriator of water for use in connection with the operation of a quartz stamping mill is bound to so use the water as not to infringe the rights of a prior appropriator for irrigation purposes, and is therefore liable to the latter for any injury to the land by the discharge into the stream of tailings or other débris from the mill. What deterioration in quality would injuriously affect the water for irrigation is a question for the jury.

In Error to the Circuit Court of the United States for the District of Montana.

This action was originally brought in one of the courts of the state of Montana, to recover a judgment for damages, and also an injunction restraining the defendant to the suit from continuing the acts complained of. The defendant, being a foreign corporation, procured the transfer of the suit from the state court to the United States circuit court for the district of Montana, and in that court the plaintiff recast his pleadings so as to conform to the rules of practice prevailing in the federal courts. In his complaint there filed, and upon which the case was tried in the court below, the plaintiff alleged his ownership of certain described agricultural land occupied by himself and family as a homestead, and which he cultivated and farmed; that through his tract of land flows a stream of water called "Silver Creek," and that the plaintiff acquired, and ever since the year 1865 has held, the right to use 100 inches, statutory measurement, of the waters of that creek, for the purpose of irrigating his land, which, without such irrigation, would be, to a large extent, worthless; that the right so acquired and held by the plaintiff in and to the waters of Silver creek were to such waters in their natural and pure condition; that the defendant company is engaged in the business of quartz mining; that its mill is situated on Silver creek, about 10 miles above the land of the plaintiff, and that its ores are crushed in the mill by stamps through the use of water; and that the waters used by the company in its crushing process are the waters of Silver creek; and that, in and about the crushing of its ores, the defendant company has, for three or four years last past, and yet is, using the waters of Silver creek, taking them from the stream in their pure and natural condition, and returning them again to the stream at points immediately below the mill; and that when so returned to the channel of the creek, after passing through the mill, the waters are charged and laden with sediment and tailings; and that the sediment and tailings so discharged into the creek, by reason of the carelessness and negligence of the company in failing to properly crib and settle the same, and of the defective appliances used by the company therefor, are carried down the stream, and thereby to and upon the land of the plaintiff; and that the water of the creek, when it reaches the land of the plaintiff, by reason of being charged with débris, is wholly unfit for irrigating purposes, and, when spread upon the land of the plaintiff, the sediment is deposited, and has been so deposited during the time specified, in many places to a depth of two feet, covering the plaintiff's meadow land, destroying the natural grasses, rendering the same worthless and unproductive, and filling the plaintiff's irrigating ditches, and destroying their usefulness; and that the rights of the plaintiff to the waters of Silver creek were acquired many years prior to any use of the waters or right to the use of the waters of that creek by the defendant company; and that, by reason of the acts alleged, the plaintiff has suffered damages during the years 1889, 1890, and in 1892, up to the commencement of the suit, to his crops and his land, to the extent of $500 a year. And, by way of supplemental complaint, the plaintiff alleged that he has been further damaged by the continuation of the alleged illegal acts of the defendant company down to and including the month of September, 1892, in the further sum of $2,500. The answer of the defendant company put in issue all of the facts so alleged by the plaintiff, except the fact that the defendant company used the waters of Silver creek in its quartz mill, and, in that connection, avers that at various points on its own premises along Silver creek, and above the land described in the complaint of the plaintiff, the defendant company has erected a series of dams and reservoirs,

whereby the tailings, sand, etc., from its quartz mill are held back and impounded so that the waters of Silver creek, when they finally leave the premises of the defendant company, though somewhat discolored by use by the defendant in its quartz mill, are reasonably fit for the irrigation of agricultural crops, and that the waters are not sufficiently charged with sand or tailings from the mill to materially injure the meadow or land of the plaintiff when used thereon for irrigation. The answer further avers that at all times since the plaintiff has had any right to the use of the waters of Silver creek, if such right he has, the waters of that stream have been used for mining purposes at points above his land, and have at all times since plaintiff had any right thereto carried down to his land more or less sand and sediment resulting from their use for mining purposes. The answer further avers that during the month of June, 1892, a cloud-burst occurred near the head of Silver creek, causing an extraordinary and unprecedented flood therein, and that by reason thereof, and by reason of an unusual and extraordinary rainfall which prevailed at or about that time, the dams and reservoirs of the defendant company were, without the fault or neglect of the defendant, partially washed out, whereby a quantity of the sand and tailings from the defendant's mill, together with large quantities of tailings from placer mining operations carried on in the gulch through which Silver creek flows, were washed down the stream; that the gulch of Silver creek, for several miles above the land described in the plaintiff's complaint, was placer mining ground, and had been mined by divers placer miners, none of whom were connected with the defendant company, and that the tailings from such placer mining operations were deposited in and along the channel of the stream at points above the premises claimed by the plaintiff; that large quantities of such tailings, together with some of the sand, gravel, and tailings from the defendant's mill, were deposited and lodged on the premises described in the complaint by the flood mentioned; and, on its information and belief, defendant alleges that this, and none other, constitutes the trespass and the wrongs and grievances complained of by the plaintiff. The defendant company, by its answer, set up the further defense that any cause of action which the plaintiff has or claims accruing prior to the 16th day of May, 1890, is barred by the provisions of section 42 of chapter 3 of the Code of Civil Procedure of the State of Montana.

The court below instructed the jury, among other things, that, in order for the plaintiff to recover, it was incumbent upon him to establish, by a clear preponderance of proof, that between the 16th day of May, 1890, and the 30th day of September, 1892, his premises were damaged by sand, débris, or tailings from defendant's quartz mill, exclusive of the amount of such tailings, sand, and débris as was deposited thereon by the flood of June, 1892. Such damage as occurred to the plaintiff prior to May 16, 1890, the jury was told, was barred by the statute of limitations of Montana; and for such damage as was caused by the extraordinary flood of June, 1892, the court instructed the jury the defendant company was not responsible. Of this the plaintiff in error does not complain; but it does complain of the refusal of the court to give these instructions to the jury, which it requested: "(1) The plaintiff claims that, at the date of his appropriation of the waters of Silver creek, they were in their natural and pure condition. If you should find from the evidence in this case that such was the fact, this would not confer upon the plaintiff the right to have such waters always remain in such natural and pure condition. His right to the use of such waters was limited by the use for which he appropriated it. According to the allegations of his complaint, this appropriation was for the purpose of irrigating the premises mentioned and described in the complaint, and it therefore follows that persons having occasion to use the waters of Silver creek above him for mining, milling, irrigating, or any other legitimate purpose may do so even though, as to plaintiff, they may be subsequent appropriators, providing they do not materially deteriorate the waters of said stream, so as to render them unfit for the purposes for which the plaintiff or his predecessors in interest appropriated them, to wit, for the purpose of irrigating said premises. If, therefore, you should find from the evidence in this case that the defendant, after using the waters of said Silver creek in its quartz mill, by means of its dams and reservoirs built for that purpose, impounded its tailings so that

the waters of said stream, when they finally left defendant's premises, were reasonably fit for irrigating plaintiff's premises, and were not materially unfit for such purposes, then the plaintiff has no cause of action, and your verdict will be for the defendant. (2) The court further instructs the jury that while the law thus permits the use of water by a subsequent appropriator, and will not interfere with his use thereof at the instance of a prior appropriator so long as, by such use, the waters of the stream are not materially impaired for the uses for which the prior appropriator took them up, it fixes no standard by which to determine the degree or quantity or impairment which will entitle him to recover damages therefor. It wisely leaves the question as to what deterioration in quality will be an invasion of the rights of the first appropriator to depend on the special circumstances of each case. In other words, it is a question of fact for the jury whether the use of the waters of Silver creek by the defendant in its quartz mill, and after the same has been settled in the dams and reservoirs of the defendant as shown by the testimony, are so impaired in quality as to be unsuitable for the irrigation of plaintiff's premises, or materially impaired for such purposes. If you should find from the evidence that the waters of said Silver creek, after so being used by the defendant, were not materially impaired for such purposes, your verdict should be for the defendant." The plaintiff in error excepted to the action of the court below in refusing to give these instructions. It also excepted to the action of the court in giving, without qualification, the following instruction: "The questions you are called upon to determine are: First. Was the irrigating ditch and land of plaintiff, and the grass grown thereon, damaged on account of any tailings from defendant's mill deposited in the waters flowing down Silver creek, conveyed to the said irrigating ditch and to the said land? Was this done on account of any negligence of defendant? If the defendant dumped its tailings into said Silver creek, and allowed them to be carried down said creek, and to be deposited on the land of plaintiff, without any attempt to restrain them, it does not appear that it had any right to do so. If it attempted and undertook to crib and impound them, then it was required by law to exercise that care and prudence which a man of ordinary prudence would exercise in cribbing and impounding tailings so as to prevent them from flowing upon his own land. * * *" The court below also gave to the jury this instruction, among others: "The jury are instructed that a party suing for damages to his premises must establish, by a clear preponderance of the evidence, that his premises were damaged by the wrongful acts of the defendant, and must furnish, by his testimony, evidence showing, or tending to show, that the premises owned or occupied by him were impaired in value, and the extent thereof, before he is entitled to recover more than nominal damages. * * *" The jury found in favor of the right of the plaintiff, and assessed his damages at $902.

Cullen & Tool, for plaintiff in error.

Tool & Wallace, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The right acquired by the plaintiff in and to the use of the waters of Silver creek was prior in time to any use of those waters by the defendant company. The right thereto acquired by the plaintiff was for the purpose of irrigating his land. That right could not be interfered with by any subsequent appropriation or use of the waters of the stream by the defendant company. At the same time, the plaintiff's right was not, and could not be, invaded by any subsequent appropriation or use of the waters of the creek which did not impair the use of those waters by the plaintiff, to the extent of their

appropriation by him, for the purposes for which he made the appropriation, namely, for irrigation.   The defendant's subsequent appropriation and use of the waters of the stream was, however, controlled by the maxim, "Sic utere tuo ut alienum non lædas."   For any injury done to the plaintiff's land during the time limited by, and with the exception stated in, the instructions of the court below, by the discharge into the stream of tailings or other debris from the defendant's mill, the defendant was clearly liable.   Woodruff v. Mining Co., 18 Fed. 753, and the numerous cases there cited.

· What deterioration in quality would injuriously affect the water for irrigation, and whether or not the deterioration to which the defendant company subjected the waters in question injured the land of the plaintiff, were matters of fact; and those facts, we think, were left to the jury with sufficient clearness by the instructions of the court as given, although the court improperly instructed the jury, in effect, that, if the company used proper care in impounding the tailings from its mill, it would not be liable.   This error was, however, favorable to the plaintiff in error, of which it has no just cause of complaint.   Judgment affirmed.