MARTHA GOOD, Respondent, v. WEST MINING COMPANY, Appellant.

Springfield Court of Appeals, April 3, 1911.

1. DAMAGES: Damage to Crops: Practice: Objections to Testimony: Remittitur: Harmless Error. Even if error was committed in permitting a witness to testify that the crops destroyed had a certain market value delivered at the market three miles distant, when the correct measure of damages was the value of the crops at the time they were destroyed, yet this error is not a reversible one where defendant failed to make the proper objection when the question was propounded and when the correct rule for measuring the damages was covered by an

instruction, and when a remittitur was ordered by the trial court which covered more than the amount testified to by the witness.

2. **PRACTICE: Remittitur: Harmless Error.** Where testimony, erroneously admitted, relates to the question of the amount of damages and is of such character that the damage covered by the testimony can be accurately ascertained, the effect of the admission of such testimony can be cured by remittitur.

3. **DAMAGES: Injury to Real Estate: Damage Caused by Different Parties.** In an action for damages against defendant for depositing a sediment called sludge upon plaintiff's land from a mine operated by defendant, defendant claimed that the damage had also been caused by other mine owners, acting independently, and that defendant could only be held for nominal damages until the particular damage done by defendant could, under the evidence, be separated from the damage done by the others. Whether or not this is the correct rule of law is not decided, but it appears to have been the rule adopted by the trial court in an instruction submitting this issue, and the evidence is *held* sufficient to justify the jury in finding that the damage done by defendant could be ascertained, for plaintiff's evidence tended to show that all the damage was done by defendant.

———: ———: ———: **Burden of Proof.** In an action for damages alleged to have been caused by defendant in allowing sludge from its mill to be discharged upon plaintiff's land, the evidence on the part of plaintiff tended to show that all the damage had been caused by defendant. The defendant claimed that the damage had also been caused by other mills discharging sludge into the same channel with defendant and that the damage caused by defendant could not be separated and ascertained. *Held*, that the burden was upon the defendant to show that the damage caused by it could not be separated from the damage caused by the others and that this fact did not appear from the evidence.

5. **WATERS: Damages: Real Property: Depositing Debris in Stream.** Even though the defendant mine owner had the right to the reasonable use of a stream for the purpose of carrying water from its mine, yet a reasonable use of the stream could under no circumstances extend far enough to permit defendant to deposit sludge from its mine upon plaintiff's land.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*R. M. Sheppard* and *Spencer, Grayston & Spencer* for appellant.

(1) Defendant had a right to make a reasonable use of the course of drainage and could not be held liable for damages unless it exceeded its rights in the use of said ditch. 30 Amer. and Eng. Ency. Law (2 Ed.), 382. (2) The defendant could not be held liable for damage done by others, acting independently of defendant. There was no joint liability, and, even though it may have been a difficult matter to determine how much damage was done by defendant alone, it was the duty of plaintiff to furnish some evidence upon which the jury could determine the amount of damage done by the defendant. The testimony of Samuel Flock was sufficient basis for the instruction requested by defendant, but refused by the court. Navigation Co. v. Richards, 98 Am. Dec. 211; Seely v. Alden, 61 Pa. St. 306, 100 Am. Dec. 642; 30 Am. and Eng. Ency. Law (2 Ed.), 381. (3) The remittitur being merely a reduction of a general verdict, did not cure the error in the admission of any improper evidence as to the amount of damage. Mattes v. Railroad, 138 Mo. App. 61; Carter v. Railroad, 128 Mo. App. 57; Jones v. Lake Club, 122 Mo. App. 117.

*R. A. Mooneyham, I. N. Threlkeld* and *Byron H. Coon* for respondents.

(1) The authorities cited by appellant under point one relate to streams of water or watercourses as such but do not apply to the case at bar. To constitute a watercourse there must be a stream usually flowing in a particular direction, must flow in a definite channel and have a bed, sides or bank. Benson v. Railroad, 78 Mo. 504; Jones v. Railroad, 18 Mo. App. 251; Byrner v. Railroad, 47 Mo. App. 383. (2) The superior (higher landowner) proprietor has no right to collect the wa-

ter in a body on his land or in greatly increased unnatural quantities and precipitate it upon his neighbor to the substantial injury of the latter. Schneider v. Railroad, 29 Mo. App. 68; McCormick v. Railroad, 70 Mo. 359; Abbott v. Railroad, 83 Mo. 271; Benson v. Railroad, 78 Mo. 504; Rychlicki v. St. Louis, 98 Mo. 497; Paddock v. Sones, 102 Mo. 226. (3) The decisions of all the courts (so far as we are able to ascertain) lay down a rule more strict in mining cases and are uniform in holding that the mine operator or miner is absolutely bound to take care of and keep the tailings, sludge and debris off of his neighbor or adjoining and lower landowners' property. 15 Am. and Eng. Ency. Law (1 Ed.), 587; Jones v. Jackson, 9 Cal. 237; Logan v. Driscoll, 19 Cal. 623; Hobbs v. Canal Co., 66 Cal. 161; Lincoln v. Rogers, 1 Mont. 217; Nelson v. O'Neal, 1 Mont. 284; Ralston v. Plowman, 1 Idaho 595; Harvey v. Mining Co., 1 Nev. 539; Woodruff v. Mining Co., 18 Fed. 383; Bank v. Estate, 101 Mo. App. 370.

COX, J.—Action for damages alleged to have been caused by defendant while conducting mining operations on higher land, discharging water and sediment called "sludge" from its mine in such a manner that it washed down upon the land owned and leased by plaintiff and overflowed a ditch running through plaintiff's land, causing permanent injury to part of the land and destruction to crops growing thereon, and on other portions of the land. Verdict for plaintiff for five hundred dollars. The court required a remittitur of two hundred dollars, judgment was entered for three hundred dollars, and defendant has appealed.

The errors assigned relate to the refusal of the court to strike out certain testimony and the giving and refusing instructions.

The plaintiff was a gardener, and with other crops, had potatoes, carrots and tomatoes growing upon the land which were destroyed by overflow and deposit of

"sludge" upon the land. Plaintiff's son, in testifying, was asked about these crops and about how many bushels of each were destroyed and the market value. He gave the value of each at one dollar per bushel. On cross-examination it was developed that the market value which he had mentioned was the value delivered at Joplin, three miles distant. Counsel for defendant then moved the court to strike out all of this witness' testimony in relation to the market value of these crops which the court refused to do.

It is now insisted by defendant that the measure of damages was the value of the potatoes, tomatoes and carrots as they were at the time they were destroyed and not their value gathered and delivered at Joplin, and contends that the failure of the court to strike out this testimony was reversible error. The court adopted defendant's theory of the law upon this question and gave the following instruction:

"In assessing plaintiff's damages to growing crops, if any, you should consider and determine from the evidence what was the reasonable value of such crops, if any, as you find were destroyed at the time they were destroyed, and allow plaintiff such sum therefor as you find the reasonable value thereof at that time."

If the defendant was unwilling to have the testimony admitted in the form in which it was he should have objected at the time when the witness was asked to give the market value and required the testimony to have been restricted to the value of the crops standing on the land, but having admitted the testimony without objection the court did not commit error in refusing afterward to strike it out. Furthermore, the plaintiff secured a verdict in this case for five hundred dollars and the court required a remittitur of two hundred, and an examination of the testimony in this case discloses that the value at Joplin of the entire amount of potatoes, tomatoes and carrots destroyed did not exceed the sum of fifty-five dollars. It is, therefore, ap-

parent that the remittitur covered more than the amount testified to by the witness. In cases of this character where testimony may be admitted erroneously, yet if the testimony relates to the question of the amount of damage and is of such a character that the damages covered by the testimony can be accurately ascertained, the effect of the admission of such testimony can be cured by a remittitur. [Franklin v. Butcher, 129 S. W. 428.] And as that was done in this case there is no room for complaint.

Defendant asked and the court refused the following instruction:

"The court instructs the jury that even though you may find from the evidence that the defendant discharged water and sediment into the ditch running through plaintiff's land, yet if you also find and believe from the evidence that during the same period any other person, company or corporation, acting independently of the defendant, also discharged water and sediment into said ditch, and that the general result of the acts of all the parties so discharging water and sediment into said ditch was that the said ditch overflowed and caused damage to plaintiff's land and crops, and that the amount of damage done by the defendant cannot be ascertained from the evidence and separated from the amount of damage done by others contributing to said general result, then you cannot allow the plaintiff more than nominal damages which is defined to be one cent or one dollar."

The refusal of this instruction is assigned as error. The evidence in this case shows that the plaintiff was the owner of five acres of land and was the tenant in possession of ten acres adjoining, and that a ravine or ditch ran diagonally through both the five and ten acre pieces. On the five acres she had crops of potatoes, tomatoes, carrots, beans, etc., and on the ten acres she had corn and hay. To the southwest upon higher land was a mill operated by defendant in connection with

its mining business, and from this mill a large volume of water which was pumped out of the mine, and "sludge," which was the waste from cleaning the ore, were discharged, and, following the natural course of drainage, flowed into the ditch passing through plaintiff's land, and by so doing, the "sludge" was deposited in the ditch until it had become almost filled, and the water and the "sludge" discharged from defendant's mill overflowed the land of plaintiff, rendering some of it valueless and destroying crops upon other portions. The testimony on the part of plaintiff tended to show that this overflow of the water and "sludge" came from defendant's mill alone. While the testimony on the part of defendant tended to show that there were other mills located in the same neighborhood that also deposited water and "sludge" that drained in the same channel, and it is now contended by defendant that this brings him within the rule which is held to be the law in some states that where different parties act independently of each other and the general result of all their actions is to cause damage to another party that they cannot be held as joint tortfeasors, and to hold one responsible for damages the amount of damage caused by that one must be separated from the whole damage before any recovery can be had.

Whether this is a correct rule or not it is not necessary for us to decide in this case for the court, by its instructions to the jury, adopted that theory of the law as we find by the following instruction which was given:

"The court further instructs the jury that if they find in favor of the plaintiff, in assessing her damages they should take into consideration only such damages as were occasioned to her property by means of sediment being washed thereon from the mine owned and operated by the West Mining Company, and that any damage to any of her property occasioned by any person, persons or company other than the defendant should not be considered by the jury."

It will be noted that by this instruction the court expressly limited plaintiff's right to recover to the damage done by the defendant and excluded from their consideration damage done by any other person or company. Having given this instruction we do not think it was error to refuse the instruction first above set out asked by defendant.

The refused instruction was properly refused for another reason. Conceding that if it be true that if the damage was contributed to by a number of persons, and that these persons were acting independently of each other and it was impossible to ascertain the amount of damage caused by each, then none could be held responsible for more than nominal damage; yet the evidence in this case is not sufficient to warrant the instruction as asked. Plaintiff's testimony tended to show that the entire damage was caused by the defendant. The defendant, to overcome the effect of this testimony, undertook to show a state of facts which would bring it within the rule above stated, but in this it failed. All it did show was that other mills were discharging water and "sludge" into the same channel with defendant. This was not enough. Proof of the bare fact that other parties discharged water and "sludge" in the same channel was not sufficient to show that the damage caused by each could not be separated from the other. Suppose for instance that the exact amount of water and "sludge" discharged by each mill could have been ascertained, it would then have been an easy matter to have divided the damage according to the amount of water and "sludge" that each one discharged into the ditch. In any event, the jury would be allowed a most liberal latitude in trying to make the separation if they were called upon to do so. [Navigation Co. v. Richards, 57 Pa. St. 142, 98 Amer. Dec. 209.]

Defendant, in this case, relied upon the rule above mentioned as a defense, and the burden was upon it to bring itself within its terms. Having failed to do this,

the court was not called upon to submit that issue to the jury, and was justified in refusing the instruction as asked.

Complaint is also made of an instruction given by the court in behalf of plaintiff in which the jury were told that the defendant had the right to make a reasonable use of the watercourse for the purpose of conducting water from its said mine, and that if any damage was occasioned to plaintiff's property from water coming from defendant's mine while the defendant was making a reasonable use of said stream for the purpose of carrying water from said mine, then plaintiff could not recover for damage caused in that way, but that the right to use the stream for the purpose of conveying water from its mine did not give the defendant the right to use said watercourse in such a manner as to deposit "sludge" or other materials upon plaintiff's land to her damage. It is contended that since defendant had the right to make a reasonable use of the natural drainage that it could not be held responsible for damages of any kind unless it was making an unreasonable use of the ditch for drainage purposes.

We think the court was right in holding that a reasonable use of the stream could, under no circumstances, extend far enough to permit defendant to deposit debris from its mine upon plaintiff's land. If instead of depositing "sludge" into the ditch and washing it upon plaintiff's land with water, defendant had loaded it into a wagon and hauled it and dumped it upon plaintiff's land the result would have been the same, and there is no more reason for saying that defendant could do one than that it could do the other. [Hobbs v. Canal Co., 66 Cal. 161, 4 Pac. 1147; Robison v. Black Diamond Coal Co., 57 Cal. 412, 40 Amer. Rep. 118; St. Louis Safe Deposit and Savings Bank v. Estate, 101 Mo. App. 370, 394, 74 S. W. 474.]

As to the deposit of "sludge" on plaintiff's land the defendant was properly held to be absolutely liable

regardless of the question of negligence or reasonable or unreasonable use of the stream flowing through plaintiff's land.

The judgment will be affirmed.  All concur.