(No. 6666.   May 25, 1939.)

ERIC RAVNDAL and JERRY RAVNDAL, Respondents, v. NORTHFORK PLACERS, a Mining Partnership Comprised of J. F. McGovern and J. J. McGovern, Jr., Appellant.

[91 Pac. (2d) 368.]

C. Walker Lyon and Lot L. Feltham, for Appellant.

Preston Thatcher, for Respondents.

BUDGE, J.—Respondents own and farm a strip of about 25 acres of land along the Northfork River, Lemhi county, raising mostly hay and grain, using water taken from the river for irrigation. Appellant lessee of the Sundown Placer Mines, situated on the west side of the Northfork River some five miles above respondents' land uses the hydraulic system for the recovery of gold from its placer holdings. Appellant takes water from the river uses it in its hydraulic process or "Giants," washing the silt, sand and gravel, extracting the gold and returning the water and the remainder to the river. Respondents instituted this action seeking damages alleged to be caused by sand, silt, gravel and mud dumped into the river from appellant's placers flowing into their ditches and upon their lands, filling up the ditches and injuring the crops.

Judgment was entered in respondents' favor for $300 damages and costs, an order of injunction prayed was refused, and this appeal was taken from the judgment.

Appellant first urges the court erred in overruling the demurrer to the complaint, contending it does not allege facts sufficient upon which to predicate a right for the recovery of damages and further, that the acts of appellant as alleged constitute a public nuisance requiring that respondents sustain special damage to themselves apart from the rest of the public in order to recover for injuries sustained.

In *Hill v. Standard Min. Co.*, 12 Ida. 223, 85 Pac. 907, this court considered questions like those herein raised, passing upon the sufficiency of a complaint couched in language and containing averments substantially the same as those appearing in the complaint herein, determining that such complaint stated a cause of action. The court used the following language in part:

"Mr. Gould, in his excellent work on waters, section 122, says: 'The general rule is that individuals are not entitled to redress against a public nuisance. The Private injury is merged in the common nuisance and injury to all citizens, and the right is to be vindicated and the wrong punished by

a public prosecution, and not by a multiplicity of separate actions in favor of private persons. If, however, a public nuisance, such as an unlawful obstruction to a common passage, causes peculiar damage to an individual, he may maintain an action therefor. In such case, the declaration or complaint need not negative the lawfulness of the obstruction, or its continuance for a reasonable length of time, or that it was unavoidable because of inevitable accident, these being matters of defense to be set up by answer. But the particular damage is the gist of the action, and must be specially set forth in the declaration or complaint.' This seems to us to be a very clear and concise statement of the law and is founded in justice and reason. Applying the rule laid down by this learned author to the case at bar, we find the appellant in the undisputed possession of the property described in their complaint, that said property is rendered valueless for agricultural, grazing, farming, townsite and residence purposes, poisoning and rendering the well water unfit for use, killing and blasting fruit trees, vines, grass and other vegetation thereon, and that plaintiffs were in such possession of said premises in March, 1886, and are at the present time in quiet and peaceable possession.''

Herein we find respondents in undisputed possession of the property described in their complaint and that by reason of the large quantities of sand, silt and sediment wrongfully and unlawfully discharged from the sluice boxes of appellant and carried by the waters of the Northfork River to the diversion works and ditches of respondents and into said ditches and onto the lands of respondents, the ditches of respondents become completely filled, requiring the expenditure of a great amount of labor to remove the same and in places completely covering the vegetation, smothering the same and causing it to die. Paragraph 8 of the complaint further recites:

''That the plaintiffs have suffered and still suffer a special and peculiar injury resulting from the said wrongful acts of the defendants, in that they are now, and have been during all of said time, deprived of the full use and benefit and enjoyment of said waters so appropriated and used by them, and are required to expend large sums of money in

cleaning out said ditches, diversion works and corrugations, and are required to expend large sums of money for additional labor in applying said waters to the irrigation of said lands, and in that their said lands have been and now are being covered with sand and silt and have been and now are being permanently injured all to their damage in the sum of $500.00."

█ Appellant in its argument refers to that portion of art. 15, sec. 3 of the Constitution of this state providing:

"In any organized mining district those using the water for mining purposes or milling purposes connected with mining shall have preference over those using the same for manufacturing or agricultural purposes."

In *Hill v. Standard Min. Co., supra,* the court, referring to this constitutional provision, said:

"We cannot see the application of this provision of our constitution to the case at bar. Appellants do not complain of the use of the waters of Canyon creek by respondents for mining and milling purposes. The complaint is that respondents cast enormous quantities of debris and poisonous substances into Canyon Creek which follows the channel of that stream down to its confluence with the South Fork of the Coeur d'Alene river, and thence carried down that stream and deposited on the lands of plaintiff, thus causing the injury for which they ask to be compensated in damages. *There is nothing in this provision of the constitution, nor in any of its provisions, that authorizes or permits parties engaged in mining or any other occupation to fill up the natural channel of any of the public streams of the state to the injury of any other user of the waters of the stream. . . . .* When respondents located their mines and erected their mills on or near Canyon creek and began to cast the waste from either into such stream, they assumed all risk of damages to anyone below on that stream, or any stream to which it is tributary who were in possession of property that might be damaged by such use of such stream at the time they began the use thereof for such purpose." (Emphasis inserted.)

█ Numerous authorities announce the doctrine that while a proper use of the water of a stream for mining purposes necessarily contaminates it to some extent, such con-

tamination or deterioration of the quality of the water cannot be carried to such a degree as to inflict substantial injury upon another user of the waters of said stream. (*Montana Co. v. Gehring,* 75 Fed. 384; *Otaheite Gold & S. Min. & Mill. Co. v. Dean,* 102 Fed. 929; *Fitzpatrick v. Montgomery,* 20 Mont. 181, 50 Pac. 416, 63 Am. St. 622; *Carson v. Hayes,* 39 Or. 97, 65 Pac. 814; *Salstrom v. Orleans Bar Gold Min. Co.,* 153 Cal. 551, 96 Pac. 292; *Luama v. Bunker Hill & Sullivan Min. & Concentrating Co.,* 41 Fed. (2d) 358; *Bunker Hill & Sullivan Min. & Concentrating Co. v. Polak,* 7 Fed. (2d) 583; *Hill v. Empire State-Idaho Min. & Dev. Co.,* 158 Fed. 881; annotation to *Pennsylvania R. Co. v. Sagamore Coal Co.,* 281 Pa. 233, 126 Atl. 386, 39 A. L. R. 882, at 891; note to *Straight v. Hover,* 79 Ohio St. 263, 87 N. E. 174, 22 L. R. A., N. S., 276.) We believe the rule stated in *Arizona Copper Co. v. Gillespie,* 12 Ariz. 190, 100 Pac. 465; Id.; 230 U. S. 46, 33 Sup. Ct. 1004, 57 L. ed. 1384, is controlling in this case, namely:

"We do not mean to say that the agriculturist may captiously complain of a reasonable use of water by the miner higher up the stream, although it pollutes and makes the water slightly less desirable, nor that a court of equity should interfere with mining industries because they cause slight inconveniences or occasional annoyances, *or even some degree of interference, so long as such do no substantial damage.*" (Emphasis inserted.)

"What deterioration in quality would injuriously affect the water for irrigation, and whether or not the deterioration to which the defendant company subjected the waters in question injured the land of the plaintiff, were matters of fact;" (*Montana Company v. Gehring, supra.*)

█ The author of *Hill v. Standard Mining Co., supra,* closes his dissertation with reference to the sufficiency of the complaint therein referring to Lindly on Mines and Cooley on Torts, as follows:

"The right to the use of a stream for depositing debris from mines is discussed in section 840, volume 2, of Lindly on Mines. Many cases from the various states of the Union are cited and discussed by the author. He closes his text as follows: 'No positive rule of law can be laid down to

define and regulate such use with entire precision. As to this, all courts agree. It is a question of fact to be determined by the jury.' This conclusion certainly seems reasonable and logical. If all counsel for respondent says in his demurrer, brief and oral argument is true, he should plead it in answer and submit the questions of fact to a jury. So says Mr. Lindly, and the decisions of nearly all of the states of the Union to which our attention has been called.

Mr. Cooley, in his valuable work on Torts, second edition, page 675, discusses the question of deposits upon land. We quote the following: 'So it is a nuisance if a riparian proprietor shall cast into the stream earth, sand, and refuse of his business, or other things, which by the flowing water are carried and deposited upon the land of a proprietor below. The tort here consists in the act of committing the rubbish to the stream; the deposit upon the land below is only the consequences from which a cause of action in favor of a particular individual arises.''

We are of the opinion that the demurrer was properly overruled.

Assignments of error 2, 3, 4 and 5 are to the effect that the court erred in finding that appellant washed sand, silt and sediment from its placer operations into the Northfork River; that such sand, silt and sediment was carried down to and into the ditches and onto the lands of respondents; that by reason of appellant pouring sand and silt from its placers into the Northfork River large quantities were being deposited on respondents' lands causing respondents a great amount of labor to remove the same from their ditches and lands; and, that respondents have suffered and still suffer a special and peculiar injury resulting from the acts of the appellant and have been required to expend large sums of money and labor to clean out their ditches.

There is considerable evidence to the effect that although placer mining was carried on on the Northfork River prior to and after 1936 by others than appellant, the waters of the river were ''practically clear'' before the Northfork Placers (appellant) began operating in 1936. Prior thereto only a little sediment came down the river and ran into the ditches and the condition related and for which respondents

sought damages commenced in 1936. The source of the mixture of silt, sand, sediment, soil, everything mixed together, was stated to be the Northfork Placers. There was further testimony that there was no trouble from sediment and the water was clear when appellant was not placering. In view of such evidence appellant's contention that no damage can be allowed respondents for the reason the amount occasioned by appellant's operations cannot be segregated from the damage occasioned by others is without force. (*Good v. West Min. Co.*, 154 Mo. App. 591, 136 S. W. 241; *Watson v. Colusa-Parrot Min. & Smelting Co.*, 31 Mont. 513, 79 Pac. 14.)

Various witnesses, including respondents, testified that they had noted the ditches on respondents' lands several times and had noticed the sediment from the placer operations "filled the ditches nearly to the top," that the water looked very dirty and roily, that the ditches filled up for quite a distance, and that considerable ground in patches in the fields was covered with brown and muddy sediment. The witness Seelye's attention was called to the ditches on respondents' land "a great many times" by respondents being engaged in digging them out. There was testimony that if left uncontrolled it took only about an hour for the laterals to fill with sediment. With reference to the amount of labor required there was testimony that after the irrigation season it took one good man at least thirty days to clean the ditches of the accumulation of silt and sediment preparatory to another irrigating season, and, that during the irrigating season of approximately five months it took the labor of one man, full time, to keep the ditches cleaned out and free of sediment and silt. The injuries sustained by respondents are special in the sense they are direct and substantial and are not such as the public would necessarily share. (*Stricker v. Hillis*, 15 Ida. 709, 99 Pac. 831; *Hill v. Standard Min. Co., supra; Arizona Copper Co. v. Gillespie, supra.*)

There was sufficient evidence to support the findings. It is urged respondents were guilty of contributory negligence by reason of the fact that they did not so rebuild their ditches and diversion system so as to prevent the silt and sediment from collecting in or entering their ditches,

urging "it is a fundamental rule that one who is injured in his person or property by the wrongful or negligent acts of another . . . . is bound to exercise reasonable care and diligence to avoid loss or to minimize the resulting damage." There are authorities to the effect that negligence is not a question in such cases. (*Good v. West Min. Co., supra; Yolande Coal & Coke Co. v. Pierce,* 12 Ala. App. 431, 68 So. 563; *Corona Coal Co. v. Hooker,* 204 Ala. 221, 85 So. 477.) Conceding, purely for the purpose of argument, that the question of negligence and contributory negligence was properly before the court, there was considerable testimony *pro* and *con* upon the question of whether or not respondents could prevent the entry and collecting of sediment and silt in their ditches and upon their lands, and there was testimony to the effect that methods suggested by appellant to prevent the entry of silt and sediment had been tried and found unsuccessful. It therefore appears there was evidence from which the court could have found a lack of contributory negligence upon the part of respondents. The record further discloses that respondents did use considerable effort in an attempt to minimize the damage, keeping their ditches cleaned out to prevent a total loss to the crops grown on the lands. We see on merit in appellant's contention in this regard.

Lastly appellant urges the court erred in decreeing judgment for respondents and against appellant in the sum of $300, and costs, appellant contending respondents failed to give any specific detail of damage to their ditches. In addition to the amount of labor, heretofore referred to, necessary to keep the ditches cleaned out there is testimony that respondents estimated they had expended three or four hundred dollars worth of work, basing the same upon the amount of time required and the cost of a man for such labor at three or four dollars a day, which evidence substantially supports the judgment.

The judgment is affirmed. Costs awarded to respondents.

Ailshie, C. J., and Givens, Morgan and Holden, JJ., concur.

Petition for rehearing denied.